[No. 24715. Department One. April 9, 1934.]

HELEN COSGROVE, *Respondent,* v. NATIONAL CASUALTY COMPANY, *Appellant.*[1]

*Roberts, Skeel & Holman* and *Frank Hunter,* for appellant.

*C. J. Henderson* and *Alfred McBee,* for respondent.

STEINERT, J.—This is an action upon an insurance policy, and was brought to recover the amount of the death benefit prescribed therein. Trial was had before a jury, which returned a verdict favorable to plaintiff, widow of the insured. From a judgment entered thereon, motions for judgment notwithstanding the verdict and, in the alternative, for a new trial having been denied, defendant has appealed.

The facts are as follows: On February 5, 1931, the appellant issued to the insured, W. J. Cosgrove, its "Travel and Pedestrian Accident Policy," insuring him

" . . . against Death or Disability resulting directly, independently, and exclusively of all other causes from bodily injuries effected solely through EXTERNAL, VIOLENT and ACCIDENTAL MEANS,"

subject, however, to all limitations and conditions contained in the policy. The respondent herein was named as the beneficiary. The policy was issued in consideration of a registration fee of $1.25, paid by the insured, and his agreement to continue as a regular reader, during the life of the policy, of a certain daily newspaper published in Seattle. The present controversy centers upon the interpretation to be given to the following provision contained in the policy:

"If the Insured shall (a) . . . (b) By being struck, knocked down or run over while walking or standing on a public highway by a vehicle propelled by steam, cable, electricity, naphtha, gasoline, com-

pressed air, liquid or horse power, (*excluding injuries sustained . . . while doing work on a public high- way . . .*), . . . suffer within thirty days from the date of accident any of the specific losses set forth below in this Part IV, the Company will pay the sum set opposite such loss:

"For loss of life . . . One Thousand Dollars ($1,000.00) . . ."

We have italicized the portion of this provision which calls for particular attention and interpretation.

The insured, Mr. Cosgrove, was employed by Skagit county as a truck driver, and was a member of a road crew which was engaged in digging, hauling and dis- posing of gravel in connection with the repair and maintenance of a county road. His hours of work were from eight a. m. until noon and from one to five p. m. The gravel was taken from a pit alongside the road and was loaded, by means of a hoist, into trucks which carried it down the road to a point where it was to be dumped. After the gravel had been dumped, one of the members of the crew would spread it upon the road. Mr. Cosgrove operated one of the trucks in which the gravel was hauled.

On July 20, 1931, the crew quit as usual for lunch at noon. During the lunch hour, Mr. Cosgrove de- livered a load of gravel to the residence of a friend living about a mile and a half from the gravel pit. This was done on Mr. Cosgrove's own time, and for which he received a supply of eggs in return. After delivering this load of gravel, he started back toward the pit at about twenty minutes to one. The crew re- sumed their work as usual at one o'clock.

The accident with which we are here concerned oc- curred between one-thirty and two o'clock. Imme- diately prior thereto, one of the trucks was being loaded at the pit, and Mr. Cosgrove was waiting in

line with his truck about one hundred and fifty feet away. Between his truck and the pit was another truck which would naturally precede him in being loaded. Upon the loading truck was a water jug from which all of the members of the crew drank from time to time, as they desired. As the loaded truck started to leave, Mr. Cosgrove walked down the road toward it, got upon its left running-board, and reached over across the driver's seat to get the water jug. Finding it empty, he set it down again and stepped backwards off the running-board. In doing so, however, he stumbled and staggered backwards five or six steps, falling to the ground in front of the left rear wheel. The truck was then moving slowly in second gear. The rear wheel of the truck ran against his back, while he was in a sitting position on the ground, and, unfortunately, crushed his body to such an extent that he died shortly thereafter. At the time of the accident, the insurance policy was in force.

The principal question here is, as the trial court stated, whether the decedent was, at the time, engaged in "doing work on a public highway." It is apparent that the phrase just quoted imports, or suggests, several ideas. It may have reference to the *nature* of the work, that is, work incident to the construction, maintenance or repair of a public highway, whether that work be done actually within the limits of the highway or not. On the other hand, it may have reference to the *place* where the work is being carried on, that is, upon a highway or elsewhere, regardless of whether the work be of a public or a private nature. The distinction, however, can make no difference in this case, because the work was that of repairing a public highway and was being performed within the limits of the highway itself; in other words, both as

to nature and as to location, the work was *on a public highway.*

Respondent also argues that the phrase refers only to such work as is being performed while the laborer is actually on the surface of the road, in person, and while expending his efforts directly upon it. This would naturally exclude all such work as is performed by workmen while stationed upon any piece of machinery, appliance or truck used in connection with the work. This argument, however, is, in our opinion, too strained, and without any good reason to support it. If a workman should seek to recover an indemnity under an insurance policy or compensation under the industrial insurance act, he would not be denied recovery merely because at the time of sustaining an injury he was *upon* a piece of machinery used in connection with the work, rather than directly upon the ground itself.

In the instant case, the insured was engaged in his usual vocation, during his regular hours of work. In operating his truck, he was engaged in performing a duty that was incident to, and a part of, the work on the highway. The fact that his regular duty was that of driving a truck, rather than that of wielding a pick or shovel on the ground, does not classify him as one who was not "doing work on a public highway."

In *Continental Life Ins. Co. v. Turnbough,* 151 Miss. 43, 117 So. 334, and *King v. Continental Life Ins. Co.,* 104 Pa. Sup. 429, 159 Atl. 86, policies similar to the one before us were involved, each containing a provision similar to the one with which we are here concerned. In both cases, it was held that the insured's injury was within a similar exception contained in the policy, and recovery was therefore denied. In the first of those cases, the exception referred to injuries sustained "while working *in* a public highway;" in the second

case, it referred to injuries sustained "while working *in* or *on* a public highway." In the present case, the wording is "while doing work *on* a public highway." While the words *in* and *on* may have, in some respects, different shades of meaning, there can be no material difference between them when used to denote location with reference to a highway.

▋ Respondent argues and urges that, inasmuch as the insured was not, at the time of the accident, performing his usual duties of driving a truck, he was therefore not "doing work on a public highway." A workman does not lose his character or status as such merely because he temporarily ceases from work in order to obtain necessary refreshment or to attend a call of nature, particularly so when his wants are attended to upon the employer's premises.

"Such acts as are necessary to the life, comfort, and convenience of the servant, while at work, though strictly personal to himself and not acts of service, are incidental to the service, and injury sustained in the performance thereof, is deemed to have arisen out of the employment. A man must breathe and occasionally drink water, while at work. In these and other conceivable instances, he ministers unto himself, but, in a remote sense, these acts contribute to the furtherance of the work." *Archibald v. Workmen's Compensation Commissioner*, 77 W. Va. 448, 87 S. E. 791, L. R. A. 1916D, 1013.

See, also, to the same effect, *Whiting-Mead Commercial Co. v. Industrial Accident Commission*, 178 Cal. 505, 173 Pac. 1105, 5 A. L. R. 1518; *Northwestern Iron Co. v. Industrial Commission*, 160 Wis. 633, 152 N. W. 416; *Malone v. Detroit United Ry.*, 202 Mich. 136, 167 N. W. 996.

The acts of the insured in the present case were in the course of his employment, and their nature was

such as to be included within the term "while doing work on a public highway."

In the absence of some statutory provision to the contrary, an insurance company has the right to limit its liability, and to impose restrictions and conditions upon its contractual obligation, not inconsistent with public policy. The present policy of insurance was issued for a nominal consideration, and the appellant company had the right to determine what hazards it would assume for that amount of consideration. One of the hazards that it expressly excluded was any injury sustained by the insured while "doing work on a public highway." The facts of this case bring it within the exception stated in the policy, and hence no liability of appellant can be predicated thereon.

The judgment is reversed, with direction to the trial court to dismiss the action.

Beals, C. J., Main, Mitchell, and Millard, JJ., concur.