[No. 43715. En Banc. October 9, 1975.]

AETNA INSURANCE COMPANY OF HARTFORD, *Petitioner*, v. RAY J. KENT *et al, Respondents.*

*Aiken, St. Louis & Siljeg,* by *Charles E. Siljeg* and *Gerald L. Bopp,* for petitioner.

*Miracle, Pruzan & Nelson,* by *Howard P. Pruzan,* for respondent Smith.

*Hackett, Beecher & Hart,* by *John A. Hackett* and *Wayne C. Vavrichek,* for respondents Utilities Construction Corp. et al.

HOROWITZ, J.—Aetna Insurance Company seeks review of a decision of the Court of Appeals affirming a judgment

of the trial court construing a loading and unloading clause in a contractor's insurance policy, the clause being contained in the section of the policy dealing with exclusions from liability. We reverse.

The stipulated facts show the following: Intervenor Tracy Smith was riding as a passenger in the front seat of a Volvo sports coupe owned and operated by Mark P. Poll. They were proceeding behind a dump truck owned by respondent Jack Kent, doing business as Jack Kent Dump Truck Service, when suddenly a rock fell from the bed of the dump truck, bounced on the pavement, and crashed through the Volvo's windshield, striking Smith in the face, causing serious injuries.

The truck involved in the described injury was part of an operation involving the transportation of rock, gravel and dirt from a Washington State-owned gravel pit to a bridge construction site. The State had entered into a general contract with Utilities Construction Corporation and Utilities Construction had subcontracted with respondent Kent to transport the materials from the gravel pit to the construction site. In performing this subcontract, Kent furnished a 1966 Euclid loader and its operator and a number of dump trucks and drivers. The loader, by use of a mechanical shovel, scooped up material at the gravel pit site and deposited it in the dump trucks. When the trucks were loaded, they were driven to the construction site.

Intervenor Smith commenced an action against respondent Kent and intervenors Utilities Construction Corporation and the State of Washington based primarily upon the allegedly negligent loading of rock onto the dump truck.

At the time of the accident, respondent Kent was insured by appellant Aetna Insurance Company on two insurance policies; namely, an automobile liability policy and a contractor's policy. The automobile liability policy included coverage for bodily injury to each covered person of $25,000 for an annual premium of $1,294. The coverage is described as follows:

1. COVERAGE C—BODILY INJURY LIABILITY

. . .

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage C. Bodily injury . . .

. . .

to which this insurance applies, caused by an occurrence and arising out of the *ownership, maintenance or use, including loading and unloading, of any automobile,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . .

(Italics ours.)

The contractor's policy includes bodily injury coverage to each covered person of $250,000 for a premium of $41. The coverage is described as follows:

1. COVERAGE A—BODILY INJURY LIABILITY

. . .

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. Bodily injury . . .

. . .

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . .

This insuring clause is qualified by the exclusionary section of the contract which provides in pertinent part as follows:

This insurance does not apply:

. . .

(b) to bodily injury or property damage arising out of the *ownership, maintenance, operation, use, loading or unloading of*

(1) any automobile or aircraft owned or operated by or rented or loaned to the named insured . . .

(Italics ours.)

Aetna commenced the instant action seeking a declaratory judgment clarifying its obligations to Kent under the contractor's policy. Aetna admits coverage on the automo-

bile liability policy but denies coverage under the contractor's policy, claiming that to construe that policy as imposing coverage would constitute duplicate coverage never intended either by Aetna or by the insured, Kent. Kent and the intervenors, Smith, Utilities Construction Corporation, and the State of Washington, contend Kent is covered both by the automobile liability policy under the loading and unloading clause and under the contractor's policy. The trial court and the Court of Appeals, Division One, agreed with the position taken by the insured and the intervenors and, accordingly, held the contractor's policy covered the injuries sustained by intervenor Smith.

Intervenor Smith bases her claim of liability

> both upon negligence in the use and operation of the said truck and upon negligence in the use and operation of the said loader in connection with the loading of materials at the gravel pit site and the transporting of materials from the gravel pit site to the bridge construction site.

Aetna contends these grounds of liability are excluded from coverage by the above quoted language of the contractor's policy. The Court of Appeals in holding the contractor's policy applied explained that a loading and unloading clause contained in an insurance policy providing coverage should be liberally construed to expand the coverage on the theory that such a clause is ambiguous. *Bobier v. National Cas. Co.*, 143 Ohio St. 215, 54 N.E.2d 798 (1944). However, if the loading and unloading clause is contained in an exclusionary clause, strict construction is necessary to favor the insured in providing coverage which would otherwise exist but for the exclusionary clause.

The Court of Appeals discussed the meaning of the phrase "loading and unloading," calling attention to the "coming to rest" and the "complete operation" doctrines. Under the "coming to rest" doctrine, loading is interpreted as beginning only after the object to be transported has come in the immediate vicinity of the insured vehicle and unloading is interpreted as ceasing when the object transported first comes to immediate rest upon removal from the

vehicle. Under the "complete operation" doctrine, loading and unloading are interpreted as involving the entire process involved in the movement of the articles from the place where the insured finds them to the place where the insured turns them over to the one to whom they are to be delivered. 8 D. Blashfield, *Automobile Law and Practice* § 317.9 (3d ed. 1966); Risjord, *Loading and Unloading*, 13 Vand. L. Rev. 903 (1960); Annot., 95 A.L.R.2d 1122 (1964); Annot., 160 A.L.R. 1259 (1946). The "complete operation" doctrine is said to be the majority rule. *See* Risjord, *Loading and Unloading, supra* at 904. The Court of Appeals held these doctrines applied only to policies covering loading and unloading but did not apply to policies which excluded coverage from loading and unloading.

The rule of strict construction of exclusions contained in an insurance policy is merely an aid at arriving at the intention of the parties to that policy. It is not intended that the rule should be applied to override the otherwise apparent clear intention of the parties. *Handley v. Oakley*, 10 Wn.2d 396, 116 P.2d 833 (1941). The intention of the parties to the insurance policies must control concerning the coverage provided. The intention of the parties here is ascertained from two sources (1) the language of each policy issued by Aetna to the insured and (2) the premium cost of the policy providing coverage as compared with the premium cost of the policy excluding claimed identical coverage. Let us consider each of the sources of intention described.

The automobile liability policy, by Coverage C, provides coverage for "[b]odily injury . . . to which this insurance applies, caused by an occurrence . . . arising out of the *ownership, maintenance or use, including loading and unloading*, of any automobile . . ." On the other hand, the contractor's policy, by its own terms, does not apply "(b) to bodily injury or property damage arising out of the *ownership, maintenance, operation, use, loading or unloading* of (1) any automobile or aircraft owned or operated by or rented or loaned to the named insured . . . ."

It will be noted that not only is the language of loading and unloading virtually the same in both policies, but each policy uses identical language in the words "ownership, maintenance or use." Moreover, the exclusionary language also adds the word "operation." When, therefore, the virtually identical language of each Aetna policy is noted, the language evidences an intention that the automobile policy provide liability coverage of a kind the contractor's policy excludes.

In the following cases the court held that coverage provided by an automobile liability policy under the loading and unloading clause would not be deemed provided by a loading and unloading clause contained in the exclusionary provision of a general liability policy. *Farmers Union Oil Co. v. Central Sur. & Ins. Corp.*, 256 F.2d 603 (8th Cir. 1958); *Lumbermens Mut. Cas. Co. v. Employers' Liab. Assurance Corp.*, 252 F.2d 463 (1st Cir. 1958); *State ex rel. Butte Brewing Co. v. District Court*, 110 Mont. 250, 100 P.2d 932 (1940); *Bobier v. National Cas. Co., supra*; *Pacific Auto. Ins. Co. v. Commercial Cas. Ins. Co.*, 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 (1945); *Hardware Mut. Cas. Co. v. St. Paul Mercury Indem. Co.*, 264 Wis. 230, 58 N.W.2d 646 (1953).

Moreover, the gross disparity in premium costs is clear evidence the contractor and automobile liability policies were not intended to provide the same coverage but rather were intended to provide mutually exclusive coverage. In the automobile policy, coverage was provided for each person sustaining bodily injury up to $25,000, with the maximum for each occurrence of $100,000. The annual premium charged was $1,294. In the contractor's policy, however, the coverage was $250,000 for bodily injury for each person covered by the policy and $500,000 for each occurrence. The annual premium charged was $41. Clearly, Aetna did not intend by the contractor's policy to provide $250,000 of automobile liability coverage for 41/1294 of the premium costs of the automobile liability coverage contained in the automobile policy. Similarly, it is unreasonable to believe

that Kent in purchasing the contractor's policy for $41 reasonably expected thereby to obtain automobile liability coverage for which he paid $1,294. It is more reasonable to believe the parties intended each policy to provide mutually exclusive coverage and the premium was charged accordingly.

The Court of Appeals offered an alternative ground in support of its decision. The court held that the loader was "mobile equipment" which is not excluded from coverage under the contractor's policy. The negligence claimed, however, is the negligent loading of the dump truck. Regardless of whether the loading was performed with the assistance of the loader, the fact remains that loading was involved and, under the terms of the contractor's policy, loading is excluded. The loading of the dump truck being excluded under the contractor's policy but included under the automobile liability policy, the contractor's policy provided no coverage to Kent for the injuries sustained by intervenor Smith.

Reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied January 20, 1976.