[Nos. 10558–2–I; 10340–7–I.   Division One.   January 5, 1984.]

JOHN GREER, *Appellant,* v. NORTHWESTERN NATIONAL
INSURANCE COMPANY, *Respondent.*

LYNDA PETERSON, *Respondent,* v. JOHN GREER,
*Respondent,* NORTHWESTERN NATIONAL
INSURANCE COMPANY, *Appellant.*

*Larry E. Levy, Edward S. Winskill,* and *Davies, Pearson & Anderson, P.S.,* for Greer.

*Robert P. Karr, Rodney J. Vessels, Philip Talmadge,* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.,* for Northwestern National Insurance Company.

*Timothy J. Lowenberg* and *Schweinler & Lowenberg,* for respondent Peterson.

CALLOW, J.—John H. Greer appeals the order of the Superior Court, Pierce County, entered in Greer v. Northwestern National Insurance Company, cause 298999, which denied his motion for partial summary judgment and which granted Northwestern National Insurance Company a summary judgment of dismissal on the issue of passenger liability coverage of a motorcycle insurance policy. Northwestern appeals a judgment of the Superior Court, Pierce County, which denied its motion to intervene and set aside the default judgment entered in Peterson v. Greer, cause 288437. Both appeals have been transferred and consolidated for hearing and disposition by this court.

Two issues are presented:

1. Whether the guest liability exclusionary clause of the insured's motorcycle insurance contract excluded coverage for claims brought by an injured motorcycle passenger against the named insured.

2. Whether an insurer's motion to intervene in and set aside a default judgment entered against its insured is

timely where the insurer knew of the pending litigation but unequivocally refused to defend or appeal on behalf of the insured.

On August 29, 1978, John H. Greer, appellant/cross respondent, was issued a liability coverage insurance policy for his 1978 Kawasaki motorcycle by Northwestern National Insurance Company, cross appellant/respondent, through his agent, Fleming, Gibson & Wood, Inc. The policy had an added exclusionary clause entitled "Guest Liability Exclusion" which read:

Part A of the policy is amended as follows:
Exclusion 17 is added.
17. For any person while occupying your covered motorcycle. This exclusion does not apply to you.

Thereafter, on May 28, 1979, Greer lost control of his motorcycle and was involved in an accident. Lynda Peterson, respondent, who was riding as a passenger on the back seat was seriously injured. Greer filed a claim and on June 19, 1979, was sent a letter from Marvin L. Matson, a claims representative for Northwestern, informing him that Northwestern had determined that his claim was barred by the "Guest Liability Exclusion."

On July 7, 1979, in response to an inquiry by Greer's attorney, who was representing Greer only for the traffic charges which arose as a result of the accident, the office of the Insurance Commissioner sent Greer a letter informing him that in its opinion Greer had liability coverage with respect to an action brought by a passenger. Northwestern was never informed of this letter.

In November or December of 1979, Greer and Peterson began living together. On January 17, 1980, Peterson filed a lawsuit against Greer in King County Superior Court, Peterson v. Greer, cause 288437. Greer was served a copy of the summons and complaint by Peterson in their mutual residence. Greer contacted an attorney, Vincent L. Gadbow, and was advised to provide Matson with the summons and complaint. On January 18, 1980, Greer met with Matson who refused to accept the summons and complaint on

behalf of Northwestern, as per Northwestern's instructions. Greer then returned to Gadbow's office and signed an affidavit of acceptance of service of the summons and complaint. The affidavit was on stationery from the offices of Peterson's attorney and was notarized by Gadbow. On January 21, 1980, Greer was sent another letter by Matson who reaffirmed the lack of coverage for any claim by Peterson and encouraged Greer to obtain legal counsel at his own expense and defend the action.

On March 6, 1980, a covenant not to execute on judgment was executed in which Peterson agreed to look exclusively to Northwestern to satisfy any judgment she might recover against Greer. An order of default was entered against Greer in King County on March 11, 1980, and venue was changed to Pierce County for the presentation of formal proof for the convenience of Peterson and the witnesses. Formal proof was presented on July 18, 1980. Greer appeared pro se and testified briefly. On October 17, 1980, findings of fact, conclusions of law and a judgment in the amount of $555,297.86 for Peterson were entered.

In December of 1980, Greer and Peterson were married. On December 11, 1980, Greer commenced an action in Pierce County Superior Court against Northwestern, Greer v. Northwestern National Insurance Company, cause 298999, seeking indemnification for the default judgment and other damages arising out of the allegedly "bad faith" actions of Northwestern in failing to defend. Northwestern's answer was filed on March 5, 1981, and included a counterclaim and a third party complaint against Peterson. Concurrently with the filing of its answer, Northwestern filed a motion to intervene and to set aside the order of default entered March 11, 1980, and the judgment on the default entered October 17, 1980. These motions were denied by the trial court by an order entered April 10, 1981. Northwestern now appeals from that order of the trial court.

On May 1, 1981, Northwestern moved for summary judgment of dismissal in Greer v. Northwestern alleging that

Greer's claim was barred by virtue of the "Guest Liability Exclusion" provision. Greer moved for a partial summary judgment on that same issue of liability. The trial court granted Northwestern's motion and denied Greer's motion by an order dated June 5, 1981. Greer now appeals the order of the trial court entered June 5, 1981. The appeals by Northwestern and Greer were subsequently transferred to this division and consolidated for hearing and disposition.

The first issue presented is whether the guest liability exclusionary clause of the insured's motorcycle insurance contract excluded coverage for claims brought by an injured motorcycle passenger against the named insured.

Greer contends that Part A, Exclusion 17 clearly and unambiguously excludes coverage for liability of a passenger, i.e., a passenger on the motorcycle will not have liability coverage for property damage or injuries to others that he or she becomes legally responsible for, but does not exclude liability coverage to the named insured for injuries to a passenger. Moreover, he maintains that even if the exclusion is ambiguous, it must be strictly construed in favor of the insured. Northwestern, however, contends that the insurance contract, read in its entirety, unambiguously excludes from coverage any injury sustained by a passenger unless that passenger is the named insured.

The interpretation of an insurance contract is a question of law. *Pacific Indem. Co. v. Bloedel Timberlands Dev., Inc.,* 28 Wn. App. 466, 468, 624 P.2d 734 (1981). "Unless there is an ambiguity in the terms of a contract and contradictory evidence is introduced to clarify the ambiguity, summary judgment is proper despite a difference between the parties as to the legal effect of the provision in question." *Hallauer v. Certain,* 19 Wn. App. 372, 375–76, 575 P.2d 732 (1978); *see Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970).

Ambiguous exclusionary clauses in insurance policies generally are construed strictly against the insurer. *Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.,* 32

Wn. App. 32, 37, 645 P.2d 1122 (1982); *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 358, 517 P.2d 966 (1974). However, this general rule cannot be utilized "to rewrite the contract or override the apparent intention of the parties where the language is clear and unambiguous." *Milliron v. United Benefit Life Ins. Co.,* 18 Wn. App. 68, 71, 566 P.2d 582 (1977). "Clear and unambiguous language is not to be modified under the guise of construing the policy." *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 73, 549 P.2d 9 (1976); *see Pierce v. Aetna Cas. & Sur. Co.,* 29 Wn. App. 32, 627 P.2d 152 (1981).

> The rule of strict construction of exclusions contained in an insurance policy is merely an aid at arriving at the intention of the parties to that policy. It is not intended that the rule should be applied to override the otherwise apparent clear intention of the parties. *Handley v. Oakley,* 10 Wn.2d 396, 116 P.2d 833 (1941). The intention of the parties to the insurance policies must control concerning the coverage provided.

*Aetna Ins. Co. v. Kent,* 85 Wn.2d 942, 946, 540 P.2d 1383 (1975). The intention of the parties is to be determined from the language of the contract "viewed against the setting in which it is formed." *Continental Volvo, Inc. v. Ross,* 17 Wn. App. 316, 317–18, 562 P.2d 1002 (1977); *see Morrison v. Anchor Cas. Co.,* 53 Wn.2d 707, 336 P.2d 869 (1959).

Exclusion 17 when read together with the provisions of the primary policy reads:

> We do not provide Liability Coverage: . . .
> Guest Liability Exclusion
> Part A of the policy is amended as follows: Exclusion 17 is added.
> 17. For any person while occupying your covered motorcycle. This exclusion does not apply to you.

As defined in the contract, "'occupying' means in, upon, getting in, on, out or off." There is no dispute that "occupying" refers to a passenger riding on the covered motorcycle.

> A liability policy applicable to a motorcycle may exclude liability while carrying a passenger . . . and such

an exception is effective to avoid liability. Likewise an exclusion in a motorcycle liability policy as to anyone riding on or in or driving the motorcycle is valid and bars recovery by a passenger on the rear seat of the motorcycle.

(Footnotes omitted.) 12A G. Couch, *Insurance* § 45:1037 (2d ed. 1981). Exclusionary clauses should be interpreted "in light of the actual language used and with respect to the policy as a whole, not in terms of isolated segments." *Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 166, 588 P.2d 208 (1978); *see* RCW 48.18.520.

Here, the declarations page of the insurance contract specifically states, "[c]overage is provided where a premium and a limit of liability is shown for the coverage." Thereafter, although there is a specific dollar amount setting forth the extent of Northwestern's liability and the amount of premium to be paid for bodily injury and property damage, no similar limitation or premium is specified for passenger liability. The plain and ordinary meaning of "bodily injury" liability coverage and "property damage" liability coverage refers respectively to protection from claims by others brought against the insured for personal injury or property damage. Likewise, the ordinary meaning of "passenger liability" coverage refers to insurance coverage protecting the insured from claims by passengers. The fact that no liability or premium is indicated for "passenger liability" demonstrates that the parties intended no coverage for such liability. *See Aetna Ins. Co. v. Kent, supra.*

Similarly, the caption "Guest Liability Exclusion" must be read as part of Exclusion 17. Captions are a part of an insurance contract and should be construed with the detailed provision. 13 J. Appleman, *Insurance* § 7387 (1976). We construe the term "Guest Liability Exclusion" in light of the entire contract to mean that liability coverage for the insured against claims for bodily injury by guests or passengers is excluded unless the guest or passenger injured is the named insured. "The terms of the policy must be understood in their plain, ordinary, and popular

sense." *Farmers Ins. Co. v. Miller, supra* at 73.

The policy also provides for liability coverage only for a "covered person" who becomes legally responsible because of a motorcycle accident. A "covered person" is defined as:

1. You or your spouse, if a resident of the same household, for the ownership, maintenance or use of your covered motorcycle or trailer.

2. Any person using your covered motorcycle, provided that person is using your covered motorcycle with your permission and operating your covered motorcycle within the scope of your permission.

3. For your covered motorcycle, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

A passenger is not included in the definition of a "covered person." Hence, any exclusion excluding a passenger from such liability coverage would be unnecessary and meaningless. A policy should not be construed to reach a result which would be unreasonable in light of the commercial setting in which it was written. *Continental Cas. Co. v. Darch*, 27 Wn. App. 726, 731, 620 P.2d 1005 (1980). The interpretation urged by Greer is unreasonable.

█ Moreover, pursuant to its motion for summary judgment dismissal Northwestern submitted the affidavit of Velda Beryl Moeller, an employee of Fleming, Gibson & Wood, Inc., who had explained to Greer the insurance coverage he was receiving. The affidavit stated in part:

5. In filling out the application for insurance, I explained to John [Greer] the various coverages for which he could apply. I specifically told him, according to my knowledge and instructions as an employee of Fleming, Gibson & Wood, Inc., that his liability coverage would not include coverage for bodily injury to passengers, unless he applied for an additional and separate premium for passenger liability coverage. I explained to John that only if he acquired passenger liability coverage, by a separate and additional premium, would he be protected by liability coverage in the event he became legally responsible for bodily injury to his passengers.

6. John told me he would not be driving his motorcycle

much and that he did not intend to have passengers.

7. John also declined to purchase medical payment coverage. He sought only the *minimum* liability protection required by state financial responsibility law. In fact, he expressed to me that his principal concern in getting insurance was to obtain the physical damage coverage necessary to satisfy Household Finance Company of Tacoma, the company that financed his motorcycle.

This affidavit was uncontradicted by Greer. Nor was any motion to strike the affidavit or portion thereof made prior to the trial court's entry of summary judgment. Failure to make such a motion waives any deficiency in the affidavit if it exists. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979). In granting a summary judgment, a reviewing court is required, as was the trial court, to

consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972); *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972).

*Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). This affidavit was properly considered by the trial court. *See Morrison v. Anchor Cas. Co., supra.*

Therefore, the ordinary and plain meaning of "passenger liability" and "guest liability," the policy captions, the absence of a premium payment, and the language of the insurance contract viewed against the setting in which it was formed indicate that the parties intended that Greer would not be covered for claims brought against him by a passenger.

■ However, Greer also contends that the exclusionary clause is violative of public policy and, therefore, must be stricken from the insurance contract. A contract provision is subject to limitation and invalidation if contrary to public policy. *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 661, 667, 623 P.2d 1147, 637 P.2d 235 (1981). This theory was first raised during oral argument before this court. Although this would

ordinarily preclude appellate review of such theory, *Wilson v. Steinbach, supra* at 440; *see* RAP 2.5(a), we will consider it. *Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied,* 411 U.S. 983 (1973), by implication created an exception which permits consideration on review of a theory not theretofore advanced where fundamental justice may require it. *See Peoples Nat'l Bank v. Peterson,* 82 Wn.2d 822, 830, 514 P.2d 159 (1973); *Haslund v. Seattle,* 86 Wn.2d 607, 616, 547 P.2d 1221 (1976); 2A L. Orland, Wash. Prac. § 2132, at 502 (3d ed. 1978).

> Courts are created to ascertain the facts in a controversy and to determine the rights of the parties according to justice. Courts should not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent. A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it.

*Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 623, 465 P.2d 657 (1970).

█ █ In *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982), the court held that a family and household exclusionary clause was void as against public policy. "An exclusion which denies coverage when certain victims are injured is violative of public policy." 97 Wn.2d at 209. The court's holding was based, in part, on the Washington financial responsibility act, RCW 46.29, which "creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others." 97 Wn.2d at 206.

> The family or household exclusion clause strikes at the heart of this public policy. This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. In essence, this clause excludes from protection an entire class of innocent victims for no good reason.

97 Wn.2d at 208.

> Under any circumstances, exclusion clauses which purport to deny coverage to children of the insured or any person not a party to the insurance contract are violative of this state's public policy. *We reserve for a later date the question of the validity of exclusions which are consciously bargained for by the insurer and named insureds in the manner described above.*

(Italics ours.) 97 Wn.2d at 213.

Here, the exclusionary clause denies coverage when certain persons, *i.e.,* passengers other than the named insured, are injured and denies coverage to a person not a party to the insurance contract. It is not an exclusion which focuses on the risk associated with who is driving the vehicle, *Wiscomb,* at 209, but on the additional risk which comes into being when a passenger is carried on a motorcycle.

*Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983) addressed the question whether an insurance policy which excluded the insured vehicle from the definition of an underinsured vehicle was against public policy. The court held that such a policy was not violative of public policy and that the injured passengers were not entitled to recover under both the liability provision *and* the underinsured motorist provision. The court further stated:

> Respondents insist *Mutual of Enumclaw Ins. Co. v. Wiscomb, supra,* controls. *Wiscomb* involved the validity of a family exclusion clause in the liability portion of an automobile insurance policy. Respondents believe that several factors which persuaded us to invalidate the family exclusion clause in *Wiscomb* are present here. First, in both situations the exclusion does not focus upon the risk associated with who is driving, but upon the injured parties. Second, this type of exclusion clause is part of a take–it–or–leave–it package offered by the insurer, and over which neither the insured nor the excluded persons have any bargaining power. Finally, family exclusion clauses are inconsistent with the State's public policy of assuring compensation.
>
> *Wiscomb's* holding is grounded on reasons not present here. In *Wiscomb,* we recognized that not all exclusions violate the public policy of this state. In that case we

were concerned about the parties' lack of bargaining power in contracting with the insurer. In the instant case the passengers were not contracting parties with Millers. The passengers here were able to purchase the protection they seek from their own insurance company, whereas in *Wiscomb* the parties could not purchase the protection sought. Further, the underinsured motorist limitation here does not "deny" coverage to passengers, it merely limits passengers to the amount provided by the general liability coverage.

*Millers*, at 7–8.

Peterson was not a contracting party with Northwestern. There is no indication that she could not have purchased protection from her own insurance company. Furthermore, as observed in *Wiscomb*:

> The family or household exclusion clause violates this state's public policy of assuring compensation to the victims of negligent and careless drivers. The strength of this public policy overrides any "freedom of contract" analysis—*at least when the parties to the insurance contract have not truly bargained for such an exclusion.*

(Italics ours.) *Wiscomb*, at 213. It could not be established any more clearly that Greer bargained for the coverage he received and expressly rejected passenger coverage.

*Mutual of Enumclaw Ins. Co. v. Wiscomb, supra,* acknowledged that exclusions have been expressly approved in the state of Washington and notes that those exclusions are valid because they were directed at the driver—the party who is or who may be negligent. Likewise, in *Wiscomb,* it was held that the exclusion of family members from coverage was violative of public policy because family automobile passengers were to some extent virtually captive audiences to the insured driver. This is not the case with the adult nonrelated volunteer motorcycle passenger.

We note that the very nature of motorcycles and motorcycle riding makes it possible for passengers also to be negligent. Some motorcycles are built to carry passengers while others are not. When a passenger is carried on a motorcycle, it is necessary in most cases for the passenger

to hold on to the driver or to an insecure strap or handle and to balance the motorcycle along with the driver. A myriad of additional risks and exposures are apparent to anyone familiar with the operation of motorcycles not the least of which is the fact that in any motorcycle accident the passenger is almost certainly going to be thrown violently from the vehicle. If an insurer is free to limit its risks by contracting to exclude coverage when the nature of the risk is altered by factors not contemplated by it in computing premiums, this is such a situation. Hence, the carrying of passengers on a motorcycle substantially increases the nature of the insurer's risks. As observed by Justice Steinert in *Cosgrove v. National Cas. Co.,* 177 Wash. 211, 217, 31 P.2d 80 (1934):

> In the absence of some statutory provision to the contrary, an insurance company has the right to limit its liability, and to impose restrictions and conditions upon its contractual obligation, not inconsistent with public policy. The present policy of insurance was issued for a nominal consideration, and the appellant company had the right to determine what hazards it would assume for that amount of consideration.

So too, this basic proposition of insurance law as recognized in *Millers Cas. Ins. Co. v. Briggs, supra,* observes that if insurance companies must cover risks for which they have not been compensated by the payment of premiums, the insurance company either fails or the difference must be made up by the imposition of increased premiums on all others insured by the company. The right to contract between an insured and an insurer must be upheld if underwriters and actuaries are to have any basis on which to proceed. *See* 1 G. Couch, *Insurance* § 15:47 (2d ed. 1959); 12 G. Couch, *Insurance* §§ 45:553, 45:534 (2d ed. 1981).

A similar exclusion clause was challenged as violative of

public policy in *Pino v. Allstate Ins. Co.*, 213 So. 2d 66, 67 (La. Ct. App. 1968). There, an insurance policy excluded coverage to anyone riding on a motorcycle. The court held:

> [C]ounsel has not cited nor have we found any authority for the proposition that it is against the public policy of the State of Louisiana for an insured (insurer) to issue a policy excluding liability as to an occupant of the insured vehicle. In the absence of statutory regulations to the contrary, insurers and their policy holders may contract for such limitations of the insurer's liability as they wish.

*See also Speakman v. State Farm Mut. Auto. Ins. Co.*, 42 Md. App. 666, 402 A.2d 123 (1979). As noted in *Wiscomb*, at 208, coverage was denied there to "an entire class of innocent victims for no good reason." The coverage excluded from the present policy did not leave an entire class of innocent victims without protection, and there were very good reasons for the exclusion.

There being no coverage of the risk under the insurance contract, Northwestern had no duty to defend the insured, Greer, in the action brought by Peterson. We need not reach the second issue raised on appeal. The summary judgment of dismissal entered in Greer v. Northwestern National Insurance Company, Pierce County cause 298999 is affirmed and, in light of our holding set forth herein, we also affirm the denial of the motion of Northwestern National to intervene and set aside the default judgment entered in Peterson v. Greer, Pierce County cause 288437.

ANDERSEN, J., concurs.

WILLIAMS, J. (concurring)—I concur in the majority's conclusion that Greer expressly contracted for motorcycle insurance which did not include coverage for injuries to a passenger. This is a plain term of the contract. I would not address Greer's contention that the exclusionary clause is violative of public policy because the theory was not argued

to the trial court, nor was it advanced in this court until oral argument. RAP 2.5(a).

Review by Supreme Court pending October 1, 1984.