770 F.2d 853
 Laura W. ROBERTS, Personal Representative of the Estate of
G. Ray Roberts, deceased, Plaintiff-Appellant,
v.
The CONTINENTAL INSURANCE COMPANY, a New Hampshire
corporation; the Commercial Insurance Company:
Does I through V, inclusive; and
Corporate Does I through V,
inclusive,
Defendants-
Appellees.
 No. 85-3575.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 5, 1985.
Decided Sept. 6, 1985.
 
 Sandra K. Saville, Lynette I. Hotchkiss, Kay, Christie, Saville & Coffey, Anchorage, Alaska, for plaintiff-appellant.
 Robert L. Eastaugh, John K. Brubaker, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before WRIGHT, POOLE, and HALL, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 On appeal from summary judgment for two insurers, the issue is whether an accidental death policy unambiguously excluded the decedent from coverage. We conclude that the district court was correct in determining that he was excluded.
 
 FACTS
 
 2
 The decedent, G. Ray Roberts, died in the crash of a small private plane. He owned and was piloting the plane in the accident.
 
 
 3
 At the time of his death, he was employed in Alaska by H.W. Blackstock Company. Blackstock named him as an insured under an accidental death policy issued by the defendant insurance companies. The policy provided a $250,000 death benefit for employees killed on or off duty.
 
 
 4
 The policy excluded from coverage, "travel or flight in any vehicle or device for (1) navigation beyond the earth's atmosphere or (2) aerial navigation; except to the extent such travel or flight is contained in Schedule II."
 
 
 5
 Following the plane crash, Mrs. Roberts claimed the $250,000 death benefit. The two insurers denied liability, contending that Section II excluded the decedent from coverage.
 
 
 6
 Mrs. Roberts then filed a diversity action in district court for declaratory relief.[1] The court granted summary judgment for the insurers.
 
 ANALYSIS
 A. Standard of Review
 
 7
 We review de novo the grant of summary judgment. Lojeck v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). Viewing the evidence in the light most favorable to the opposing party, we must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. Fed.R.Civ.P. 56(c); Amaro v. Continental Can Co., 724 F.2d 747, 749 (9th Cir.1984).[2]
 
 B. Choice of Law
 
 8
 Mrs. Roberts asserted below, and both parties agree on appeal, that Washington law applies to the substantive issues in this case. We find no reason to disturb the parties' choice. See Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 725 (9th Cir.1984); Jarvis v. Aetna Casualty & Surety Co., 633 P.2d 1359, 1363 n. 5 (Alaska 1981).
 
 C. Rules of Construction
 
 9
 The intention of the insurer and the insured control the coverage provided by an insurance policy. Continental Volvo, Inc. v. Ross, 17 Wash.App. 316, 317, 562 P.2d 1002, 1003 (1977). If the policy's language is unambiguous, the intent of the parties is determined from its language alone, without resort to other rules of construction. Farmers Insurance Co. of Washington v. U.S.F. & G. Co., 13 Wash.App. 836, 840, 537 P.2d 839, 842-43 (1975).
 
 
 10
 Policy language must be understood in its ordinary sense. Greer v. Northwestern National Insurance Co., 36 Wash.App. 330, 335, 674 P.2d 1257, 1261 (1984). Cumbersome, complex, and hard-to-read language does not necessarily render a policy provision ambiguous, even if analysis is necessary to interpret the policy. See 13 Appleman, Insurance Law and Practice Sec. 7386 (1976, 1984 Supp.). A policy provision is ambiguous if susceptible to two reasonable interpretations. State Farm General Insurance Co. v. Emerson, 102 Wash.2d 477, 484, 687 P.2d 1139, 1144 (1984).
 
 
 11
 If policy language is ambiguous, the court looks to extrinsic evidence to discover the parties' intent. Continental Volvo, 17 Wash.App. at 317-18, 562 P.2d at 1003; 13 Appleman, Insurance Law & Practice Sec. 7403 (1976). Only if extrinsic evidence fails to resolve the ambiguity is resort to traditional maxims of insurance contract interpretation necessary. See id. Sec. 7385; Greer, 36 Wash.App. at 335, 674 P.2d at 1260 (rule of construction is tool to discern intent of parties).
 
 
 12
 1. Schedule II. Mrs. Roberts contends that Schedule II is subject to two reasonable interpretations. Section II provides:
 
 
 13
 With respect to flying in aircraft, coverage shall not apply except while riding as a passenger, and not as a pilot or crew member, on any transport aircraft operated by the Military Airlift Command (MAC) of the United States of America or by the similar military air transport service of any other country, or on any civil aircraft, except one owned and operated by an Insured, a member of his household or the Policyholder, provided such covered aircraft (1) is operated by a properly certificated pilot, (2) has a current unrestricted airworthiness certificate, and (3) is not being used for fire fighting, pipeline inspection, power line inspection, aerial photography or exploration.
 
 
 14
 (emphasis added).
 
 
 15
 The district court understood the language to mean: "Coverage shall apply to passengers, not pilots or crew: (1) on military aircraft or (2) on any civil aircraft not owned or operated by an insured. Covered civil aircraft must be operated under specified conditions." This interpretation excludes the decedent.
 
 
 16
 Mrs. Roberts argues that the proviso, "except one owned or operated by an Insured," modifies the phrase, "and not as a pilot or crew member." She interprets Schedule II "to expressly remove from the aerial navigation exclusion death to a passenger and/or pilot in a civil aircraft owned or operated by an insured", provided the pilot and plane are certified and the plane's use is proper.
 
 
 17
 Her construction would cover the decedent, but reaches a result that would be unreasonable in light of the commercial setting in which the policy was written. See Greer, 36 Wash.App. at 337, 674 P.2d at 1262. There is no evidence that Blackstock ever intended or requested owner/pilot coverage. All parties concede that the issue of private pilot coverage never arose. Under these circumstances, we find Mrs. Roberts' interpretation unreasonable. See id.
 
 
 18
 2. Prior Judicial Interpretations. The Eighth Circuit considered the effect of a similar accidental death exclusion in a case involving an owner-piloted aircraft crash. See Iowa-Des Moines National Bank v. Insurance Co. of North America, 459 F.2d 650 (8th Cir.1972). The court found the exclusion ambiguous and allowed coverage. The case is distinguishable.
 
 
 19
 In Iowa-Des Moines, plaintiff alleged that coverage for owner/pilots was requested, discussed, and promised by the insurance company. Plaintiff also alleged that he told the insurer, after receiving the policy, that he thought he was insured. Where the insured has requested coverage for the risk, the policy language may indeed become ambiguous. That is not our case.
 
 
 20
 In Life Insurance Co. of North America v. Spradlin, 526 S.W.2d 625, 627 (Tex.Civ.App.1975), a Texas court also interpreted a Schedule II type exclusion. The court followed Iowa-Des Moines and allowed coverage. It considered only the language of the policy and traditional maxims of construction, however. Id. at 628-29. To the extent that it considered extrinsic evidence irrelevant, we disagree.
 
 
 21
 Under Washington law, we construe a life insurance policy as any other contract in view of its language and the circumstances in which it was made. See Continental Volvo, 17 Wash.App. at 317-18, 562 P.2d at 1003. Upon careful consideration of Schedule II's language and commercial setting, we find it susceptible only to the reading adopted by the district court. The provision unambiguously excludes coverage to pilots on civil aircraft owned or operated by an insured.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Mrs. Roberts initiated the action in her own name, alleging that she was a named beneficiary under the policy. She now concedes that she is pursuing the claim merely as personal representative of the decedent's estate
 
 
 [2]
 We review the district court's interpretation of state law under the same de novo standard applied to the interpretation of federal law. See Triangle Mining Co. v. Stauffer Chemical Co., 753 F.2d 734, 738 (9th Cir.1985)