891 F.2d 295
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PUGET SOUND ANTIQUE AIRCRAFT CLUB, a Washington non-profit
corporation, Plaintiff-Appellee,
v.
ADMIRAL INSURANCE COMPANY, a Delaware corporation, Defendant-Appellant,
and
Experimental Aircraft Association, Inc., a Wisconsin
corporation, Defendant-Appellee.
 No. 88-3942.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1989.
Decided Dec. 8, 1989.
 
 Before BROWNING, ALARCON, and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant-appellant Admiral Insurance Company (Admiral) timely appeals from the district court's grant of partial summary judgment in favor of plaintiff-appellee Puget Sound Antique Aircraft Club (PSAAC). Admiral also appeals the court's denial of its motion for summary judgment. This court has jurisdiction under 28 U.S.C. § 1292(b), which permits appeals of interlocutory orders. We affirm.
 
 
 3
 * This insurance dispute concerns the meaning of the following exclusionary clause, Endorsement No. 5:
 
 
 4
 It is hereby understood and agreed that the insurance afforded by this policy shall not apply with respect to liability for injury to any participant or passenger unless said person is acting solely as a spectator.
 
 
 5
 This dispute arose after Admiral denied PSAAC coverage for a claim brought against it by the survivors of Delbert Hoopman, a spectator killed in an airplane crash at a fly-in sponsored by PSAAC.
 
 II
 
 6
 A grant of summary judgment is reviewed de novo. Caldeira v. County of Kauai, 866 F.2d 1175, 1177 (9th Cir.), cert. denied, 110 S.Ct. 69 (1989). Appellate review is thus governed by the standard used by the trial court under Federal Rule of Civil Procedure 56(c). Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir.1989). We "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Reimers v. State of Oregon, 863 F.2d 630, 631 (9th Cir.1988) (footnote omitted).
 
 
 7
 The forum state in this diversity action provides the substantive legal rules for decision making. Olympic Sports Prod., Inc. v. Universal Athletic Sales Co., 760 F.2d 910, 914 (9th Cir.1985), cert. denied, 474 U.S. 1060 (1986); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). A district judge's construction of the law of the state in which he or she sits is also reviewed de novo. In Re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 III
 
 8
 Appellant Admiral argues that because Hoopman was a passenger in the ill-fated airplane he could not be "acting solely as a spectator" and therefore liability for his death is excluded. Appellee PSAAC contends that, under the clause, "passenger" and "acting solely as a spectator" are not mutually exclusive. Thus, it concludes, Admiral must include liability for passengers who are also spectators. We find only the latter interpretation reasonable.
 
 
 9
 In Washington, insurance policies are construed as contracts; interpretation is a matter of law. Greer v. Northwestern Nat. Ins. Co., 674 P.2d 1257, 1260 (Wash.App.1984) modified, 743 P.2d 1244 (1987). The basic framework for insurance policy interpretation was recently restated by the Washington Supreme Court, sitting en banc:
 
 
 10
 The court must enforce the contract as written if the language is clear and unambiguous. However, if the language on its face is fairly susceptible to two different but reasonable interpretations, the contract is ambiguous, and the court must attempt to discern and enforce the contract as the parties intended.
 
 
 11
 Public Util. Dist. v. Public Util. No. 1, 771 P.2d 701, 707 (Wash.1989) (en banc) (citation omitted) (emphasis in original). Thus, it is impermissible to depart from the face of the policy if its terms are unambiguous.
 
 
 12
 * In determining whether the disputed phrase in Endorsement No. 5 is unambiguous, we must first read it in its " 'plain, ordinary, and popular sense.' " Greer, 674 P.2d at 1261 (quoting Farmers Ins. Co. v. Miller, 549 P.2d 9, 11 (Wash.1976)). The policy itself does not expressly define any of the operative terms. However, we may resort to standard dictionary definitions to determine ordinary meaning. See, e.g., Moritz v. St. Paul Fire & Marine Ins. Co., 739 P.2d 731, 733 (Wash.App.1987). Looking at the exclusion, it is plain that the word "unless" contemplates classes of participants and passengers not excluded from coverage. Any other interpretation, including Admiral's, would render the "unless" clause superfluous. Washington law requires our interpretation to give force and effect to each clause in an insurance policy. See Transcontinental Ins. v. WPUDUS, 760 P.2d 337, 340 (Wash.1988).
 
 
 13
 The only reasonable way to give the "unless" clause force and effect is to interpret it as modifying "participant" and "passenger". Specifically, the phrase "acting solely as a spectator" refers to the passenger's status at the time of injury. The adjective "acting" is defined as "functioning". See Webster's New Universal Unabridged Dictionary 19 (2d ed. 1983). By substitution then, the phrase excludes coverage of a passenger "unless said person is functioning solely as a spectator."[1]
 
 
 14
 Neither party disputes that Mr. Hoopman's sole connection to the fly-in was as a spectator desiring a ride in an airplane owned and operated by Mr. Fredrick Imrie. Hoopman did not assist in the flying of the fated aircraft. Thus, we find that his sole function on the plane remained that of an interested spectator.[2]
 
 B
 
 15
 Second, we must interpret the exclusionary clause " 'with respect to the policy as a whole, not in terms of isolated segments.' " Greer, 674 P.2d at 1261 (quoting Shotwell v. Transamerica Title Ins. Co., 588 P.2d 208, 211 (Wash.1978). Three policy provisions are relevant.
 
 
 16
 The first provision is Endorsement No. 7, the "Aircraft Liability Exclusion" effective June 1, 1983 (the same date as the disputed Endorsement No. 5):
 
 
 17
 It is hereby understood and agreed that the insurance afforded by this policy shall not apply with respect to liability arising out of the ownership, maintenance, operation, or control of any aircraft owned or operated by the Insured or his agents.
 
 
 18
 We find this clause to be harmonious with the above interpretation of Endorsement No. 5 because it applies only to aircraft owned or operated by PSAAC, the Experimental Aircraft Association (EAA), or their agents. The owner and operator of the aircraft, Imrie, was neither a member nor an agent of either organization. Thus, Endorsement No. 5 extends to planes not owned or operated by PSAAC and its agents.
 
 
 19
 For similar reasons we find the interpretation to be consistent with the standard printed exclusions in the policy:
 
 This insurance does not apply:
 
 20
 .............................................................
 
 
 21
 ...................
 
 
 22
 * * *
 
 
 23
 (b) to bodily injury ... arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any ... aircraft owned or operated by or rented or loaned to any insured, or (2) any other ... aircraft operated by any person in the course of his employment by any insured....
 
 
 24
 Again, the ill-fated plane was neither owned, operated, rented by, nor loaned to PSAAC or EAA. Moreover, the owner, Imrie, was not employed by either organization.
 
 
 25
 Finally, Admiral argues that such an interpretation of Endorsement No. 5 cannot be reconciled with Endorsement No. 8, which sets out the premiums for fly-ins. In particular, Admiral advances two arguments. First, it contends that because the premiums are set according to the expected number of spectators, the policy does not contemplate coverage for in-flight injuries. However, Admiral severely undermines its own argument by noting that "[a]t a 'fly-in' a significant number of the people in attendance are there to fly or be flown in an airplane...." Reply Brief for Appellant at 11-12. Given Admiral's awareness of that fact, the number of spectators is indeed relevant to in-flight coverage because, simply put, more spectators may mean more rides. Thus, we find this argument unpersuasive.
 
 
 26
 Second, Admiral points out that Endorsement No. 8 does not take into account the age, condition, or maintenance of the planes, the sort of flying to take place, or "myriad other factors" necessary to rate properly in-flight risk. This, Admiral argues, is indicative of the policy's intention to exclude in-flight liability.
 
 
 27
 Admiral's argument proves too much. Clearly the above factors are equally relevant in assessing the risk to spectators on the ground as well. Ground spectators are not infrequent victims of air show crashes. Thus, the omission of those factors does not evince an intent to exclude in-flight liability.
 
 IV
 
 28
 In sum, we conclude that Endorsement No. 5 yields only one reasonable interpretation. Airplane passengers functioning solely as spectators while on board are not excluded from coverage. Because we find the policy unambiguous, we do not consider the circumstances surrounding the formation of the contract. See Public Util., 771 P.2d at 707.
 
 
 29
 Accordingly, the district court's grant of partial summary judgment in favor of PSAAC and denial of Admiral's motion for summary judgment is
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In a similar vein, participants in the fly-in, such as pilots or judges, may be injured while functioning solely as spectators of another event. The clause would not exclude them from coverage. Appellant concedes as much
 
 
 [2]
 Admiral's assertion that one can act "solely as a spectator" only while on the ground conflicts with the dictionary definition of "spectator" provided in its brief: "one who looks on or watches." All Hoopman did was "look on" as Imrie piloted the plane