[Crim. No. 14656.    Second Dist., Div. Four.    Jan. 27, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD
EDWARD HAGEN, Defendant and Appellant.

Donald Edward Hagen, in pro. per., and Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark A. Ivener, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged (count I) with possession of heroin, in violation of section 11500 of the Health and Safety Code; and (count II) with driving a motor vehicle while under the influence of heroin, in violation of section 23105 of the Vehicle Code. Two prior felony convictions were also charged. A motion under section 995 of the Penal Code was made and was granted as to count I[1] but was denied as to count II. Defendant pled not guilty and denied the priors. Trial by jury was duly waived and the case was submitted on the transcript of the testimony given at the

---

[1] Count I was based on heroin found in defendant's apartment during a search that followed his arrest. The motion was granted on the ground that the search was illegal. As a result, the evidence as to the search and its result was not included in the portion of the preliminary transcript on which count II was submitted.

preliminary hearing, together with additional testimony. The court found defendant guilty of the offense charged in count II, a motion for a new trial was made and denied, probation was denied and defendant was sentenced to state prison. No disposition was made as to the priors. He has appealed both from the order denying a new trial and from the judgment. We dismiss the appeal from the order, as not being an appealable order, and affirm the judgment.

In June 1967, the Glendale police, in cooperation with state parole agents, were looking for defendant as a parole violator for whom a warrant of arrest was outstanding. They knew that, in 1964, defendant had lived with his parents at 731 Milford in the City of Glendale and they had been advised by a prisoner that defendant and a woman were again living there in 1967. As a result, the officers and agents had "staked out" that address. At about 9 p.m., on June 28, 1967. Officer Pfaff saw a man and a woman leave the apartment and enter an automobile. The officer was too far away to identify the man but suspected that he might be defendant. He radioed for a patrol car to stop the auto for the purpose of seeing whether or not the driver was, in fact, defendant. The patrol car eventually stopped the auto in question and Officer Pfaff and the patrol car driver approached it almost simultaneously. Pfaff immediately recognized defendant as the man sought and the parole agents arriving a moment later also recognized him. He was arrested for parole violation.

He was advised of his rights, to which he responded: "I want to see a lawyer." Defendant's actions were very slow and deliberate, he was unsteady on his feet and his eyes were pinpointed and showed little reaction to light. There were old puncture marks on his arms and one that the officer thought was new. Officer Pfaff was of the opinion that defendant and his woman companion were both under the influence of narcotics.

Sometime after defendant had been arrested and booked, he complained of physical ailments and asked to see a doctor. Dr. Nichols was procured and examined defendant at about 8 or 8:30 p.m., on June 29th. The doctor diagnosed the symptoms as withdrawal pains from the use of heroin and defendant told the doctor that he had been using heroin.

Court-appointed counsel has urged five points on us as grounds for reversal to which defendant, in two supplementary propria persona briefs, has added several more. We have

read the record in the light of all contentions made. Those worthy of consideration are hereinafter discussed.

## I

■ It is urged that the arrest was illegal, on the theory that there was no justification for the chase and stopping of the auto in which defendant and his companion left the Milford address. We disagree.

An automobile may be stopped for the purpose of questioning its occupants on evidence less than that required to make an arrest. Each case must stand on its own facts. Here the police were looking for a parole violator. They had some reason to believe that he was at the Milford address[2] and, therefore, every male leaving that address was a possible candidate for apprehension. Here the police imposed no more than the temporary inconvenience of stopping the car. The occupants were not detained for lengthy questioning and no search followed. We think, considering the nature of the suspect, the data available, and the minimum detention, that the officers were within their proper scope of duty in checking the identity of a man leaving premises where they suspected defendant was living.

## II

■ Although defendant, when arrested, asked for a lawyer, none was procured. But the police are not required to secure[3] a lawyer for an arrestee, even if he asks for one, unless they desire to pursue a process of interrogation. But there was, here, no interrogation of defendant by the police. His arrest on the parole violation warrant was based on the police and agents' personal identification; it required no questioning of defendant. The suspicion of narcotic involvement also rested, so far as the police were concerned, on their own senses; nothing suggests that they asked defendant anything on that (or any other) subject.

---

[2] It is argued that the last positive data connecting defendant with the Milford address was in 1964, three years previously. But the address was, both in 1964 and in 1967, that of defendant's parents. A suspicion that he might return to their home was not unreasonable.

The other objection is that the 1967 "tip" came from an arrestee, of unknown reliability, and whose name was not given when counsel sought it at the trial. But the person giving the tip was not a participating informant whose identity must be disclosed; his (or her) tip corroborated the existing suspicion that defendant had returned to the parental roof. The officers needed no more to justify further investigation.

[3] They must, of course, allow an arrestee, on request, to telephone to a lawyer. But there is nothing in the record to show that defendant ever made such request, or that it was denied if made.

## III

■ It is urged that the admission of heroin usage given to Dr. Nichols was inadmissible because no *Miranda* warning was given in connection with the doctor's examination of defendant. This is not a case where the doctor examined the defendant as an agent of the police or for the purpose of securing evidence to be used by them. The doctor was called, at defendant's request, in order to give medical aid to the defendant. The information which he received was secured in order for the doctor to make an accurate diagnosis and to prescribe appropriate treatment. None of the evils inherent in a police interrogation, of the nature pointed out by Chief Justice Warren in his opinion in *Miranda* are here present. Had defendant been on bail and had he gone to Dr. Nichols' office to secure treatment for his distress, his statements to the doctor would have been admissible by the express terms of section 998 of the Evidence Code. We can see no reason why the admissibility of information given to a treating physician, solely for the purpose of a diagnosis and treatment sought by the patient, should be governed by a different rule merely because the examination was in a jail rather than in the doctor's office. There was no error in admitting the doctor's testimony.

## IV

■ Defendant testified that, at the time of arrest, and later, he had asked for a Nalline test, but none was given to him. The police officers denied that he had so requested. The trial court impliedly rejected defendant's testimony. We may not reweigh that issue.[4]

Defendant argues that Officer Pfaff was not shown to be qualified to testify as to defendant being under the influence of narcotics. ■ But the credibility, and reliability, of the witnesses is for the trial court, not for us.

We find no error. The attempted appeal from the order denying a new trial is dismissed; the judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied February 13, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1969.

---

[4]Under these circumstances, we, of course, express no opinion as to how far, if at all, the rule of the so-called *Newbern* cases involving tests for intoxication apply to cases involving narcotics.