**UNITED STATES of America, Appellee,**

v.

**Ira Eugene BORCHARDT, Appellant.**

**No. 86–1194.**

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1987.

. Steve Orr, (court appointed), Austin, Tex., for appellant.

Thomas E. Booth, Dept. of Justice, Appellate Section, Crim.Div., Washington, D.C., Helen M. Eversberg, U.S. Atty., Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for appellee.

Before WISDOM, JOHNSON, and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

Ira Eugene Borchardt appeals from his conviction of possession of heroin by an inmate at a federal correctional facility, 18 U.S.C. § 1791(a)(2). To secure Borchardt's conviction, the Government relied on several packets of heroin Borchardt vomited during treatment for a heroin overdose. The Government also relied on testimony of the nurse who treated Borchardt. According to the nurse, Borchardt admitted that he might have ingested heroin. Her testimony was corroborated by a prison officer who overheard Borchardt's admission. On appeal, Borchardt argues: (1) that the district court should have excluded the packets of heroin as the product of an unreasonable search; (2) that his admission to having ingested heroin was obtained in violation of the fifth amendment; and (3) that the prosecutor impermissibly commented during closing argument on Borchardt's failure to testify in his own defense. Finding Borchardt's contentions to be without merit, we affirm the judgment of the district court.

## I.

On the evening of November 17, 1984, Borchardt's cellmate at the federal penitentiary in Bastrop, Texas, alerted a guard that Borchardt needed medical assistance. The guard rushed to Borchardt's cell where he found Borchardt laying on the floor unconscious. An inmate who happened to be a medical doctor, Jeffrey McDonald, was struggling to revive Borchardt. The guard immediately advised a fellow officer, who in turn retrieved a stretcher. Together with McDonald, they carried Borchardt toward the prison infirmary. Borchardt's heart stopped in route and was revived only when McDonald administered mouth-to-mouth resuscitation and CPR. A third corrections officer who joined the group, Jerry Cox, suspected a drug overdose and radioed his suspicion ahead to the infirmary.

On arrival at the infirmary, McDonald apprised the physician's assistant, Sandra Gaines, of Borchardt's condition. Gaines checked Borchardt's vital signs, concluded he was near death from a drug overdose, and administered three doses of Narcan, a drug employed to reverse narcotic effects.[1] Although he regained consciousness after the third dose, Borchardt's condition remained precarious. Concluding that he needed more intensive treatment, Gaines summoned an ambulance to take Borchardt to a municipal hospital in nearby Austin. Officer Cox rode in the ambulance with Borchardt. Another corrections officer, Gregory Hart, followed behind in a chase vehicle.

At the emergency room, Borchardt signed a consent to treatment form and was examined by nurse Ali Gallagher. Gallagher knew of Borchardt's treatment at the prison infirmary and suspected a heroin overdose. To be certain this diagnosis was accurate, however, she questioned Borchardt about the cause of his condition. When Borchardt refused to respond with Officers Cox and Hart in the room, Gallagher asked the officers to step behind a partition separating Borchardt from other patients in the room. After they had complied, Borchardt told Gallagher that he might have unknowingly or unintentionally ingested heroin. Officer Hart, although standing behind the partition, overheard Borchardt's admission.

Having confirmed her initial diagnosis, Gallagher attempted to treat Borchardt's overdose. Borchardt frustrated her efforts, however, by refusing a treatment designed to induce vomiting, refusing a

---

1. Narcan is a narcotic antagonist used to reverse the effects of opiates after surgery or overdoses. Narcan is typically given in increments until life-threatening symptoms are reversed. The effects of some narcotics may outlast the countering effects of Narcan, so repeat doses may be required as earlier doses lose their effect. Physician's Desk Reference 922 (1985).

further dose of Narcan, and refusing an attempt to pump his stomach. In the meantime, he was becoming increasingly lethargic, an indication that the earlier doses of Narcan were wearing off. Concluding that Borchardt was no longer able to make a decision regarding treatment, Gallagher consulted with a staff doctor and then, contrary to Borchardt's wishes, administered a dose of Narcan. Gallagher later testified that absent the dose of Narcan, Borchardt would have gone into respiratory arrest and died.

Although Narcan is not designed to induce vomiting and ordinarily does not do so,[2] in this case it did. Approximately five minutes after nurse Gallagher administered the dose of Narcan, Borchardt vomited nine full bags and two burst bags of heroin. Borchardt asked Gallagher to dispose of the heroin in a nearby sink, but she refused. Instead she gave the packets of heroin to officers Cox and Hart, who were standing nearby.

Borchardt was indicted for possession of heroin in a federal correctional facility in violation of 18 U.S.C. § 1791(a)(2). Prior to trial, Borchardt filed a motion to suppress the packets of heroin, arguing that they were the product of an unreasonable search and seizure. Following an evidentiary hearing, the district court denied Borchardt's motion. The district court also denied a later pretrial motion by Borchardt seeking to suppress the statement he had made to nurse Gallagher. Borchardt was convicted as charged and sentenced to five years imprisonment. He now appeals from that conviction.

## II.

Borchardt first asserts that the district court erred in refusing to suppress the packets of heroin as the product of an illegal search. According to Borchardt, in administering the dose of Narcan nurse Gallagher conducted an unreasonable "search" in violation of the fourth amendment. We disagree.

The fourth amendment does not bar warrantless intrusions where government officials reasonably believe the intrusion is necessary to deal with a life-threatening emergency.[3] "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) (*quoting Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir.), *cert. denied*, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963)). If a reasonable and good faith intrusion is made to assist an individual in imminent danger of physical harm, evidence of crime discovered thereby is admissible in criminal proceedings. 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.4(c), at 354 (1978).

Assuming without deciding that the warrantless intrusion here, the injection of a drug incidentally resulting in the regurgitation of evidence, was a "search" within the meaning of the fourth amendment,[4] we

---

2. Narcan has few side effects and in the usual case does not induce vomiting. However, too rapid reversal by excessive doses "may induce nausea, vomiting...." Physician's Desk Reference 923 (1985).

3. *See e.g., United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978); *United States v. Doe*, 787 F.2d 1290, 1294 (9th Cir.1986); *United States v. Mayes*, 670 F.2d 126 (9th Cir. 1982); *United States v. Miller*, 589 F.2d 1117, 1125 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *United States v. Barone*, 330 F.2d 543, 544 (2d Cir.), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964); *see also United States v. Oyekan*,

786 F.2d 832, 839–40 (8th Cir.1986) (rectal examination for packets of drugs justified in part by threat to health).

4. We also do not decide whether the intrusion here was a "private" search and therefore not within the scope of the fourth amendment. We note, however, that the Supreme Court has, in the fourth amendment context, rejected the distinction suggested by the Government between searches conducted by law enforcement officials and searches conducted by other government employees. *See New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (search conducted by high school administrator). It appears that nurse Gallagher was a municipal employee.

hold that it was reasonable given the existence of a life-threatening emergency. At the moment nurse Gallagher administered the Narcan, Borchardt was in critical and steadily deteriorating condition. Gallagher, after consulting with the attending physician, reasonably concluded that a further dose of Narcan was necessary to prevent respiratory arrest and death. The resulting production of evidence was unexpected and entirely incidental to the medical purpose for the treatment. *See United States v. Barone*, 330 F.2d 543 (2d Cir.), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964) (emphasizing that warrantless emergency intrusion was without accompanying intent to either search or arrest). Ignoring Borchardt's objection to treatment was reasonable given the gravity of his condition and the fact that his judgment was impaired by the narcotic effect of the heroin.

In short, the district court could properly find that the treatment administered by nurse Gallagher was a reasonable response to a medical emergency. This finding necessarily disposes of Borchardt's further assertion that nurse Gallagher's conduct was so outrageous as to violate due process. Borchardt's motion to suppress the packets of heroin was, therefore, properly denied.

### III.

■ Borchardt next asserts that the district court erred in refusing to suppress the statement he made to nurse Gallagher regarding the cause of his condition. At trial Gallagher testified that in response to her questioning, Borchardt admitted that he might have unknowingly ingested heroin. Her testimony was corroborated by officer Hart, who had overheard Borchardt's admission while standing behind a partition. According to Borchardt, this testimony should have been suppressed because he was not given *Miranda* warnings before nurse Gallagher initiated her questioning.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court formulated a series of prophylactic rules designed to secure the privilege against self-incrimination from overreaching during custodial interrogation. Custodial interrogation was defined as "questioning initiated by law enforcement officers after a person has been ... deprived of his freedom of action in any significant way." *Id.* 384 U.S. at 444, 86 S.Ct. at 1612. *Miranda's* requirements have since been applied to questioning conducted by a broad range of government agents performing law enforcement functions. *See, e.g., Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (court appointed psychiatrist); *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (IRS civil tax investigator).

*Miranda's* requirements do not apply, however, to questioning conducted by medical professionals solely for the purpose of providing treatment.[5] Where the professional is a private citizen, the government action required to apply *Miranda* is absent. *See* 1 W. LaFave & J. Israel, Criminal Procedure § 6.10(c) (1984). This Court has reached the same conclusion, however, even where the medical professional is a public employee. *See United States v. Webb*, 755 F.2d 382, 391–92 (5th Cir.1985) (army psychiatrist not a law enforcement officer required to give *Miranda* warnings). Where such a professional seeks information solely for diagnosis and treatment of a patient, he acts not as an agent of law enforcement authorities, *compare Estelle v. Smith, supra*, but instead acts on behalf of the patient.

In the instant case, we have little difficulty concluding that nurse Gallagher was not required to comply with *Miranda* prior to asking Borchardt about the cause of his condition. Her sole purpose in questioning

**5.** Numerous state courts have concluded that medical doctors and nurses are not law enforcement officials required to "Mirandize" patients before seeking information for the purpose of accurate diagnosis and treatment. *See, e.g.,* *Commonwealth v. Allen*, 395 Mass. 448, 480 N.E.2d 630 (1985); *State v. Jones*, 386 So.2d 1363, 1366 (La.1980); *State v. Hall*, 183 Mont. 511, 600 P.2d 1180, 1182 (1979); *People v. Hagen*, 74 Cal.Rptr. 675, 269 Cal.App.2d 175 (1969).

Borchardt was medical, *i.e.*, to confirm her preliminary diagnosis that Borchardt was in fact suffering from a heroin overdose so that appropriate treatment might be promptly made. The fact that nurse Gallagher appears to have been a municipal employee rather than a private nurse in no way mandates a different result. *See United States v. Webb, supra; see also* 1 W. LaFave & J. Israel, Criminal Procedure § 6.10(d) (1984).

■ This is not a case where law enforcement officials recruited an individual to solicit incriminating information from a defendant. Here, undisputed testimony indicates that the prison officials who brought Borchardt to the hospital made no attempt to influence nurse Gallagher's conduct. One official did eavesdrop, without Gallagher's knowledge, on her conversation with Borchardt. This fact alone, however, did not transform that conversation into an interrogation for law enforcement purposes. Nor does it require suppression of statements made during the course of the conversation. *See Stanley v. Wainwright,* 604 F.2d 379, 382 (5th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1979) (*Miranda* does not protect detainees who mistakenly believe their conversations will not be overheard by officials nor does it forbid police, under fifth amendment sanction, from setting snares.). We conclude, therefore, that Borchardt's motion to suppress his statement to nurse Gallagher was properly denied.

### IV.

■ Borchardt's final assertion is directed at the following remark made by the prosecutor during closing argument:

I suggest to you that it is incredulous to suggest that Mr. Borchardt did not know that he had ingested heroin. There has been no contrary explanation offered that in any way conflicts with that except a few things and I will talk about those the next time that I get up.

According to Borchardt, the prosecutor's remark was an indirect reference to Borchardt's failure to testify because it pointed to missing testimony that only Borchardt could provide. Borchardt contends that the remark violated his fifth amendment privilege against self-incrimination.

■ The fifth amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). A prosecutor may comment, however, on the failure of the defense, as opposed to the defendant, to counter or explain the evidence. *United States v. Guzman,* 781 F.2d 428, 432 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). Such a comment is a basis for reversal only where it is "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Bright,* 630 F.2d 804, 825 (5th Cir.1980).

The prosecutor's comment in the instant case was not such that the jury would necessarily construe it as a comment on Borchardt's failure to testify. Borchardt's attorney had suggested during his opening statement that Borchardt did not know that the packets found in his stomach contained heroin. The prosecutor's remark that this explanation was incredible and that no other explanation had been offered, rather than a comment on Borchardt's failure to testify, was directed at the failure of Borchardt's attorney to offer any alternate theory of defense. Alternate explanations for Borchardt's possession of the heroin might have come from a variety of sources other than Borchardt himself, including fellow inmates. Viewed in this context, the prosecutor's remark was not an unconstitutional reference to Borchardt's failure to testify.

Having rejected each of Borchardt's assertions, we AFFIRM the judgment of the district court.

AFFIRMED.