978 F.2d 714
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Cleo L. FRANKLINS, Plaintiff-Appellant,
v.
MARICOPA COUNTY MEDICAL CENTER; Dr. Richard Seligson; Dr.
Matthews; Dr. Bruns; Dr. Weinmar, Maria Plant, R.N.;
Dorothy McPeek, R.N.; Officer Rolland Phillips; Officer
Henry Griffins; City of Phoenix Police Department;
Sergeant Copenhaver; Officer James Calams; Officer Brian
Karnes, Defendants-Appellees.
 No. 91-16413.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 9, 1992.*
Decided Oct. 29, 1992.
 
 Before POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Cleo L. Franklins appeals the district court's grant of summary judgment in his 42 U.S.C. § 1983 action. Franklins' claims arise from his arrest and searches performed prior and incident thereto. The district court found that there was no genuine issue of material fact and that the appellees were entitled to judgment as a matter of law. We affirm.
 
 
 3
 * On February 21, 1988 at 11:19 p.m., appellees officers Calams and Karnes of the Phoenix Police Department observed a vehicle parked in the desert area of 700 East Mineral Road. Calams shined his spotlight on the car, and the officers saw three persons in the vehicle moving around and bending over in the vehicle as if to hide something. The officers then approached the vehicle, Calams on the driver's side and Karnes on the passengers' side. Calams confronted the appellant, Cleo Franklins, who was in the driver's seat. Calams observed that Franklins was holding a clear plastic bag, approximately one inch by one inch, which contained a white powder substance that Calams believed to be cocaine. Calams reached into the car to retrieve the bag, and Franklins pushed him away. Calams pulled Franklins from the car and saw Franklins swallow the bag. The officers then arrested Franklins and put him in their patrol car.
 
 
 4
 Calams called his supervisor, appellee Sergeant Copenhaver, who told Calams that he should advise Franklins that he could die if a bag of cocaine burst inside his stomach. Calams so advised Franklins, and Franklins agreed to go to the hospital. The officers then transported Franklins to appellee Maricopa Medical Center.
 
 
 5
 Upon arriving at the hospital, the officers contacted appellee Dr. Seligson, who advised them that the bag could burst inside Franklins' stomach and, if the bag contained cocaine, it could possibly cause his death. Dr. Seligson likewise advised Franklins, who refused to undergo an endoscopy, a stomach pumping procedure.
 
 
 6
 At approximately 1:00 a.m. on February 22, 1988, Dr. Seligson and Calams contacted Judge Thomas O'Toole of the Maricopa County Superior Court. Upon hearing Calams swear to his version of the events, Judge O'Toole issued a telephonic warrant for the performance of an endoscopy on Franklins in order to search for the bag.
 
 
 7
 At approximately 2:00 a.m., after the telephonic warrant was issued, Franklins was taken to the emergency room, where an endoscopy was performed. The endoscopy was unsuccessful, and Franklins suffered two grand mal seizures[1] during the procedure, at approximately 2:50 and 3:00 a.m., respectively. Based on these seizures, the hospital staff declared Franklins a medical emergency and admitted him to the hospital.
 
 
 8
 Later in the morning of February 22, 1988, Franklins underwent additional procedures. Franklins took a urine test, which showed that he had traces of cocaine in his system. Sometime after 11:00 a.m., Franklins consented to a second endoscopy which was also unsuccessful.
 
 
 9
 At 3:50 p.m., based on Franklins' urinalysis results, his previous seizures, the hospital's inability to perform a successful endoscopy and the belief that Franklins had a high risk of death if the bag burst in stomach, the hospital performed an exploratory laparotomy, a surgical procedure in which the abdomen is opened in order to remove an item from the stomach or intestines. The laparotomy was performed sometime between 5:15 and 7:45 p.m. The bag was removed from Franklins' stomach during the laparotomy and there were no complications from the procedure.
 
 
 10
 On November 29, 1989, Franklins filed suit in the United States District Court for the District of Arizona, alleging that his First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendment rights were violated as a result of the foregoing events. On June 24, 1991, the district court entered judgment in favor of the appellees based on its grant of summary judgment in their favor with respect to all of Franklins' claims.
 
 II
 
 11
 A grant of summary judgment is reviewed de novo. Roberts v. Continental Ins. Co., 770 F.2d 853, 855 (9th Cir.1985). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c).
 
 
 12
 Franklins neither submitted evidence nor otherwise controverted the defendants' supporting evidence in opposition to the defendants' summary judgment motions. "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e); Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). Although Franklins argues that the district court erred in not allowing his case to proceed to trial, there are simply no factual issues in dispute. Therefore, we can properly decide this case as a matter of law.
 
 III
 
 13
 Franklins challenges (a) the initial investigation, (b) his arrest, and (c) the searches performed incident to his arrest as violative of the Fourth Amendment. We find that the sequence of events giving rise to these acts clearly shows that they were constitutional.
 
 
 14
 The police officers had an articulable suspicion sufficient to make an investigatory stop. Terry v. Ohio, 392 U.S. 1, 22 (1968). The officers noticed conduct sufficiently suspicious to warrant further investigation--the movements of the persons in the car which looked as if they were trying to hide something. Therefore, the police detainer to look further was lawful as to Franklins. In so doing, Calams noticed a bag containing what he reasonably believed might be cocaine. Calams was justified in reaching into the car to grab the bag. "[I]f, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." Texas v. Brown, 460 U.S. 730, 739 (1983) (citations omitted). Furthermore, Calams did not even seize the bag but instead merely saw it in the car and saw Franklins swallow it. "There is no reason [Calams] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." Id. at 740. Calams' observation of the bag was not a search under the Fourth Amendment. Id. There was no unconstitutional search[2] prior to Franklins' arrest.
 
 
 15
 A warrantless arrest on public property supported by probable cause does not violate the Fourth Amendment. United States v. Johnson, 626 F.2d 753, 755-56 (9th Cir.1980), aff'd on other grounds, 457 U.S. 537 (1982). Franklins was arrested after he was pulled out of his car[3] and he swallowed the bag. At the time, the officers had probable cause based on their belief that the bag in Franklins' possession contained cocaine. "There is probable cause for an arrest and a search incident to that arrest if, under a totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime...." U.S. v. Gonzales, 749 F.2d 1329, 1337 (9th Cir.1984). Therefore, the arrest was constitutional.
 
 
 16
 The initial endoscopy was performed pursuant to a warrant and based on probable cause that Franklins had swallowed a bag the officers believed contained cocaine. This search was clearly constitutional. See Fuller v. MG Jewelry, 950 F.2d 1437, 1449-50 (9th Cir.1991). Franklins himself consented to the second endoscopy. Therefore, this procedure was also not an unconstitutional search. Schneckloth v. Bustamonte, 412 U.S. 218, 232-33 (1973).
 
 
 17
 Moreover, all of the medical procedures were performed based on exigent circumstances. The Supreme Court has stated that the "need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency." Mincey v. Arizona, 437 U.S. 385, 392 (1978) (citations omitted). Furthermore, this Court has held that the Fourth Amendment does not bar government officials from making warrantless searches and seizures in circumstances where they reasonably believe that the search is required to deal with a life-threatening emergency. Mayes v. U.S., 670 F.2d 126, 128 (9th Cir.1982).[4]
 
 
 18
 In Mayes, a government official performed a warrantless search for an object that had obstructed the defendant's daughter's breathing passage. At the time, the daughter was gravely ill and in extremely critical condition. The attending physician, believing that it was imperative to examine the object that had caused the child's injury, instructed the official to return to the defendant's apartment and retrieve the object. Id.
 
 
 19
 In this case, there was a greater threat to Franklins' life. The medical procedures were performed because a high risk of death existed if the bag burst in his stomach. These exigent circumstances justified the medical procedures performed on Franklins.[5]
 
 IV
 
 20
 Franklins further argues that the district court erred in entering judgment against him on his First, Fifth, Eighth and Ninth Amendment claims in addition to the above-discussed claims, which are based on the Fourth and Fourteenth Amendments.[6] Franklins failed to allege or submit evidence supporting any specific facts underlying these claims. Therefore, the district court properly granted summary judgment in favor of the defendants as to these claims. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...." Celotex, 477 U.S. at 323-24.
 
 
 21
 Franklins also argues that the district court erred in entering judgment against him on his claim that the appellees conspired to violate his civil rights in violation of 42 U.S.C. § 1985. While this claim was not addressed by the district court, presumably because it found that the underlying claims lacked merit, there is no record support for this claim. In addition to no constitutional violations, there is no showing that the defendants were motivated by a racial or other class-based discriminatory animus. See, Guzman v. Van Denmark, 651 F.Supp. 1180 (C.D.Cal.1987) (holding that a plaintiff's section 1985 claim did not state a cause of action because it failed to allege or prove that the defendants had a discriminatory motivation). Accordingly, summary judgment was proper.
 
 
 22
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Pursuant to Ninth Circuit Rule 34-4, the panel unanimously finds this case suitable for disposition without oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Grand mal is defined as "a type of epilepsy in which there are convulsions and loss of consciousness." Webster's New World Dictionary (3rd Ed.1988)
 
 
 [2]
 Even assuming that a warrantless search occurred, it was nonetheless constitutional. The "automobile exception" to the warrant requirement obviously recognizes that the inherent mobility of an automobile "creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." California v. Carney, 471 U.S. 386, 391 (1985), citing, South Dakota v. Opperman, 428 U.S. 364, 367 (1976). See also Carney, 471 U.S. at 391-92. (citations omitted)
 
 
 [3]
 Whatever expectation of privacy Franklins may have had so as to require a warrant, the existence of manifest exigent circumstances--the officers' belief that there was a risk of Franklins' death--would constitute an exception to the warrant requirement
 
 
 [4]
 Mincey and Mayes were cited by the Fifth Circuit in United States v. Borchardt, 809 F.2d 1115, 1117 and n. 3 (5th Cir.1987). In Borchardt the court held that the Fourth Amendment does not bar warrantless intrusions where government officials reasonably believe the intrusion is necessary to deal with a life-threatening emergency. Id. at 1117
 Borchardt was suspected of ingesting heroin by government officials. After determining that Borchardt was in critical and deteriorating condition and concluding that Borchardt was unable to make a decision regarding treatment, a nurse administered a drug designed to reverse narcotic effects. Id. at 1116-1117. The court held that such a search was reasonable given the existence of a life-threatening emergency. Id. at 1118.
 
 
 [5]
 We have assumed, without deciding, that it is proper to call the medical procedures used in this case "searches."
 
 
 [6]
 This assumes that Franklins' basis for pleading the Fourteenth Amendment is its incorporation of the Fourth Amendment to the appellees' conduct. See Mapp v. Ohio, 367 U.S. 643, 657-660 (1961). While the Supreme Court held in Rochin v. California, 342 U.S. 165, 173-74 (1952), that police officers' attempt to extract potential evidence (pills) from a person's mouth by physical force and by forcing the person to undergo medical procedures violated the Due Process Clause of the Fourteenth Amendment, Rochin was decided before the Fourth Amendment exclusionary rule was made applicable to the states and its holding is now subsumed the Fourth Amendment. See, W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 5.3(c) at 503, n. 115 (1988)