# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00790-COA

**HENRY ORLANDO BROWN A/K/A HENRY O. BROWN A/K/A HENRY BROWN**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/11/2015 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDMUND J. PHILLIPS JR. |
| | CHRISTOPHER A. COLLINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, BURGLARY OF A CAMP HOUSE, AND SENTENCED TO SEVEN YEARS; COUNTS II AND III, GRAND LARCENY, AND SENTENCED TO TEN YEARS ON EACH COUNT; AND COUNT IV, FELONY MALICIOUS MISCHIEF, AND SENTENCED TO FIVE YEARS, ALL AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR SUSPENSION OR REDUCTION OF SENTENCE, WITH ALL SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER |
| DISPOSITION: | AFFIRMED - 07/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Henry Orlando Brown appeals his convictions and sentences for burglary, larceny, and felony malicious mischief. Brown argues, inter alia, that his indictment was impermissibly multiplicitous, that his confession was involuntarily given, and that the trial court erroneously ruled on multiple hearsay objections. Brown, through his pro se supplemental brief, also raises issues involving the convicting statute, his sentencing, his indictment, and other claims. Finding no error, we affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2.     In April 2014, Brown was indicted on four counts in the same indictment, including one count of burglary of a camp house, two counts of grand larceny (for the theft of two four-wheelers), and one count of felony malicious mischief (for damage to multiple four-wheelers). Two additional defendants—Oshee Moore and Bridget Harris—were charged in the same indictment. Harris is Brown's daughter. Brown went before a justice-court judge and was denied bond shortly after his arrest.

¶3.     Following his arrest, Brown was interviewed several times by Scott County investigators Willie Anderson and Billy Patrick over the course of several months. Brown sent multiple handwritten notes to the investigators asserting Moore's participation in the crime and expressing an interest in receiving a bond setting. At Brown's fourth interview, after waiving his *Miranda*[1] rights, Brown provided a four-page handwritten statement asserting that he never entered onto the victim's property but that Harris and Moore had called him asking to store the four-wheelers and other items at his mother's house and asking

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

for help selling the stolen items.

¶4.     Both Harris and Moore entered into plea deals in exchange for testifying against Brown.[2] Harris testified that Brown picked the camp-house location to burglarize and that Brown and Moore each rode one of the stolen four-wheelers (loaded with additional stolen items) off of the property while she drove the vehicle in which they had arrived. She testified that they took the four-wheelers and hid them at Brown's mother's house prior to selling them. She testified that, when they were being investigated for the crime, her father told her to tell the police that Moore did it. She stated that, after her father implicated her as well as Moore to the police, she decided to tell the truth about the involvement of all three. She stated that all three of them were high on meth at the time of the crime and that she initially thought they were only looking for scrap metal.

¶5.     Moore also testified against Brown. He stated that, after they entered the property, he hot-wired the four-wheelers while Brown searched other buildings and returned with various bags and a generator. Several victims testified as to the value of the items stolen and the cost of having damaged items repaired. A local dealer and mechanic specializing in small-engine sales and repairs also testified as to the value of the four-wheelers and the cost to repair them.

¶6.     Brown moved to suppress his inculpatory written and oral statements, arguing that the interrogating officers made a promise that he would receive a bond setting if he confessed. The court held a suppression hearing outside of the presence of the jury in which it heard the testimony of the two investigating officers. Brown did not testify. The officers testified that

---

[2] They each pleaded guilty to all four counts. They received reduced sentences and were not charged as habitual offenders.

3

Brown expressed an interest in receiving bond, but that they never offered Brown the promise of bond in return for a statement. They testified that Brown was properly Mirandized prior to talking with them, and that they refused to look at his written statement prior to the *Miranda* waiver. Brown's written *Miranda* waiver was introduced into evidence. The officers testified that Brown had a four-page handwritten statement prepared (in which he denied being present for the actual burglary), and that he had unilaterally sent letters to the officers requesting to meet with them.

¶7.    Officer Anderson testified that over the course of the approximately thirty-minute interview, he asked Brown about the discrepancies between his written statement and other evidence the police had collected. He stated, "I asked [Brown] specifically did he break into the facilities with Mr. [Moore] and Ms. Bridget. He held his head down and he said yes. I said, did you take the four-wheelers there? He stated, yes, he did." Following the court's denial of Brown's motion to suppress, Officer Anderson read Brown's written statement out loud to the jury and testified as to Brown's oral inculpatory statements.

¶8.    Officer Anderson also testified that, during the course of the investigation, Harris granted consent for law enforcement to look around her grandmother's property. He testified that he found some four-wheeler racks and that "Ms. [Harris] told us those four-wheeler racks belonged to the missing four-wheelers." Brown objected to the testimony as hearsay. The court replied, "I'm going to let you ask it in a different way. The objection is overruled." Brown then moved for a mistrial, which was denied. The State redirected its questioning to the course of the investigation.

4

¶9. Brown presented one witness, Christopher Long, who was originally a suspect in the case. Long testified in part that when he was taken in for questioning, Harris shouted at him from down the hall: "[T]ell him him and Brown did it." The State objected to Long's statement as hearsay and the court sustained the objection, instructing the jury to ignore it.

¶10. Brown was convicted on all four counts and sentenced as a habitual offender to seven years for the burglary, ten years for each count of larceny, and five years for malicious mischief, with all four sentences to run consecutively without the possibility of parole. Brown appeals.

## DISCUSSION

### I. The indictment was not impermissibly multiplicitous.

¶11. Brown argues that "[t]he combining of burglary and larceny charges in the same indictment violates the prohibition against multiplici[t]ous indictments," citing to *Johnson v. State*, 452 So. 2d 850 (Miss. 1984). *Johnson* no longer controls. Under section 99-7-2, enacted in 1986, two or more offenses properly charged in separate counts of a single indictment may be tried in a single proceeding where "the offenses are based on the same act or transaction" or "the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Miss. Code Ann. § 99-7-2 (Rev. 2015); *Rushing v. State*, 911 So. 2d 526, 532 (¶¶12-13) (Miss. 2005). A defendant can request severance when a multicount indictment has been returned, and if a defendant requests severance, "a hearing should be held on the issue." *Eakes v. State*, 665 So. 2d 852, 861 (Miss. 1996). Brown did not request severance of his charges. The burglary, larceny, and

5

malicious-mischief charges against him satisfy the statutory requirement that the counts be based on the same act or transaction or that they be based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. This argument is without merit.

**II.      The trial judge did not err in overruling Brown's motion to suppress his pretrial handwritten confession and oral statements.**

¶12.    Brown argues that the trial court should have granted his motion to suppress his inculpatory written and oral statements. The trial court must determine beyond a reasonable doubt whether a challenged confession was voluntarily offered, and the State bears the burden of proving that the confession was voluntary. *Harden v. State*, 59 So. 3d 594, 605 (¶25) (Miss. 2011). A confession is involuntary and thus inadmissible if given as a result of inducement, threat, or promise. *Morgan v. State*, 681 So. 2d 82, 86 (Miss. 1996).

¶13.    We do not find that the trial court erred in determining that Brown's inculpatory statements were made voluntarily. Brown requested to speak with the investigating officers, who refused to accept any statement from Brown until he voluntarily waived his *Miranda* rights. The officers testified that they have no authority to grant bond and that they did not promise Brown bond as an inducement to provide a statement. The court weighed the credibility of the suppression evidence and issued a ruling within its discretion. This issue is without merit.

**III.     The trial judge did not commit reversible error related to the parties' hearsay objections.**

¶14.    Brown argues that the trial court committed reversible error in overruling his hearsay

objection to Officer Anderson's statement that Harris informed him that the racks found at her grandmother's belonged to the stolen four-wheelers. Though the court overruled the objection, the court immediately required the State to "ask [the question] in a different way." Even if the court erred in overruling rather than sustaining the objection, Brown has failed to demonstrate how he was prejudiced by the statement. Harris and Moore both testified on direct examination that the stolen four-wheelers were brought to Harris's grandmother's house. Brown's four-page inculpatory statement read into evidence by Officer Anderson also makes this assertion. In light of all of the other evidence presented at trial, Brown has failed to demonstrate how the statement created prejudice warranting reversal of his convictions.

¶15. Brown also argues that the trial court erred in sustaining the State's hearsay objection to Long's testimony that Harris shouted at him to tell the police that Moore and Brown committed the crime. The court rejected Brown's argument that the statement should be admitted as an excited utterance. We do not find that the trial court erred in sustaining the State's objection to this statement as hearsay.

### IV. The trial court did not err in sentencing Brown as a felon on the charge of malicious mischief.

¶16. Brown argues that his malicious-mischief conviction should have been classified as a misdemeanor rather than a felony because the cost to repair the damaged items at the time the crime was committed was between $500 and $1,000. At the time the crime was committed, an element of the crime placed the felony threshold at $500, but at the time of Brown's trial and sentencing, the element had been amended to place the felony threshold at $1,000.

¶17. The Mississippi Supreme Court has made clear that the amendment of an element of a crime to establish a more-lenient felony threshold is qualitatively distinct from an amendment that ameliorates a sentencing statute. *Wilson v. State*, 967 So. 2d 32, 42 (¶22) (Miss. 2007). Sentencing is not affected when the elements constituting a crime are amended after the crime has occurred. *Id*. At the time the crime was committed, the felony threshold for malicious mischief was $500. Evidence was presented at trial that the damaged property cost more than $500 to repair or replace. Brown's sentence as a felon was therefore proper.

## V. Brown's Supplemental Brief

¶18. Brown filed a pro se supplemental brief that raises, by his count, twelve additional issues. For the reasons that follow, none of them is meritorious.

### a. Conviction Under the Wrong Statute

¶19. First, Brown asserts that he was erroneously convicted of malicious mischief under Mississippi Code Annotated section 97-17-67(3) (Rev. 2006). He asserts an affidavit exists as part of the State's discovery that values the property damaged at exactly $500, not in excess of $500 as required to be guilty under section 97-17-67(3). A review of the record reveals no such affidavit. Without more, we find this issue is without merit.

### b. Brown's Sentencing

¶20. Next, Brown asserts that he was sentenced under the wrong statute, that he should not have been sentenced as a habitual offender, that his sentence should have been adjusted downward, that he should have had a bifurcated trial, that no one testified as to his prior convictions, and that his sentence is cruel and unusual punishment. Brown did not raise any

8

of these issues at trial, nor did he make a single objection during the sentencing portion of his trial. As such they are all procedurally barred. Notwithstanding the procedural bar, they are all without merit.

¶21. Brown asserts he was erroneously sentenced under Mississippi Code Annotated section 97-17-41(2) (Rev. 2015).[3] Brown was convicted of two counts of grand larceny under Mississippi Code Annotated section 97-17-41(1) (Rev. 2006). The record (the circuit court's notice of criminal disposition) clearly reflects that he was sentenced under section 97-17-41(1) (Rev. 2006). As such, we find this issue is without merit.

¶22. Brown asserts he was erroneously sentenced as a nonviolent habitual offender, under Mississippi Code Annotated section 99-19-81 (Rev. 2015), because it is not clear that his prior convictions arose out of separate incidents. Brown pleaded guilty on the same day to two separate charges, and was sentenced for both of those convictions on the same day, though a different one from his date of conviction.[4] A review of the record reveals that the State submitted the judgment and sentencing orders for each conviction and that each order bears a separate and distinct case number for the respective conviction, Case No. 93-002197-

---

[3] Brown also appears to be looking at the wrong version of his sentencing statute. Section 97-17-41 was amended in 2014. Under the amended version, subsections two and four are the only sections under which there is a ten-year maximum sentence. Under the version in effect at the time he committed his crimes, there were only two subsections, both of which carried ten-year maximum sentences.

[4] Brown's prior convictions for possession of a controlled substance in an amount less than twenty-five grams, under Mich. Comp. Laws § 333.7403(2)(a)(v) (1995), and breaking and entering, under Mich. Comp. Laws § 750.110 (1994), both occurred in Michigan. Brown pleaded guilty to both charges on June 3, 1996, and was sentenced for both convictions on June 17, 1996.

04-FH and Case No. 93-014226-01-FH. We have previously held that separate case numbers evidence that prior convictions arose out of separate incidents. *See Lawson v. State*, 154 So. 3d 926, 932-33 (¶15) (Miss. Ct. App. 2015).

¶23. Brown appears to also assert that his convictions and sentencings occurring on the same days demonstrates that they did not arise out of separate incidents. In presenting its proof of Brown's prior convictions, the State stated that "although [Brown] pled guilty to these two crimes on the same day and was also sentenced on the same day, . . . these two cases arise out of separate incidences, and for which he was sentenced to the custody of the Michigan Department of Corrections for a period of a year or more." Whether Brown was convicted of, or sentenced for, his prior convictions on the same day is of no matter. *See Griffin v. State*, 607 So. 2d 1197, 1204 (Miss. 1992) (quoting *Rushing v. State*, 461 So. 2d 710, 713 (Miss. 1984)) ("Appellant's argument that the statute does not apply where the convictions, though arising out of separate incidents, occurred on the same day is completely without merit and should be rejected."). Thus, we find this issue is without merit.

¶24. Brown asserts the trial court erred, and that his trial counsel's assistance was ineffective, because in calculating his sentence as a habitual offender there was no recommendation made for a downward adjustment of his sentence.[5] Section 99-19-81

---

[5] Brown's arguments in his pro se supplemental brief for a downward adjustment are based totally on an analysis of the Federal Sentencing Guidelines as promulgated by the United States Sentencing Commission under the Sentencing Reform Act of 1984 and larger Comprehensive Crime Control Act of 1984. These guidelines in no way apply to Brown's sentencing for a violation of state law in state court. *See* U.S. Sentencing Guidelines Manual § 1A1.1 (U.S. Sentencing Comm'n 2004) (The purpose of the sentencing commission "is to establish sentencing policies and practices for the federal criminal justice system . . . for offenders convicted of federal crimes.").

10

requires sentencing to "the maximum term of imprisonment prescribed" and that the "sentence shall not be reduced or suspended . . . ." Here, Brown was sentenced to the maximum term for each count as prescribed by section 99-19-81. We find this issue is without merit. Insofar as Brown makes an ineffective-assistance-of-counsel claim on direct appeal, Brown's claim is not "based on facts fully apparent from the record." *Sandlin v. State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013). Therefore, we decline to address it further without prejudice so that it may be asserted in a properly filed motion for post-conviction relief. With all other aspects of Brown's purported error in not receiving a downward adjustment of his sentence, we find this issue is without merit.

¶25. Brown asserts he should have had a bifurcated trial because he was sentenced as a habitual offender, and that no one actually testified as to his prior convictions. Here, while the jury was out for deliberation, the court began a hearing on Brown's habitual-offender status. During that hearing, the State presented certified copies of the judgment and sentencing orders of Brown's prior convictions as evidence of the same, which were admitted without objection. The court then recessed until the jury returned from its deliberations. After returning from deliberation, the jury returned its verdict and then was finally excused. After the jury was finally dismissed, the court made its finding that Brown was a habitual offender, to which Brown made no objection.

¶26. What is intended by the bifurcated-trial requirement is "to ensure that a jury, before deciding a defendant's guilt or innocence, is not informed of the defendant's prior criminal record so as not to be improperly influenced in its verdict." *Small v. State*, 141 So. 3d 61, 66-

67 (¶17) (Miss. Ct. App. 2014). Here, a review of the record reveals the jury was not present at any time during the court's hearing on Brown's sentencing as a habitual offender, which was sufficient to meet the spirit of the bifurcated-trial requirement.

¶27. Brown also argues that his right to confrontation was violated when only the judgment and sentencing orders for his prior convictions were submitted as evidence and no witness actually testified regarding his prior convictions. Here, Brown had the opportunity to challenge the State's proof and he did not. Thus, we find these issues are without merit. This issue is procedurally barred because Brown did not raise it at trial. Notwithstanding the procedural bar, the exact same issue was raised in *Small*, and we found the issue to be without merit as such does not violate a defendant's Sixth Amendment right to confrontation. *Id*. at 68-69 (¶¶22-24). Here, Brown had the opportunity to challenge the State's proof and he did not. Thus, we find these issues are without merit.

¶28. Brown asserts that his sentence as a nonviolent habitual offender under section 99-19-81 is cruel and unusual punishment in violation of his Eighth Amendment rights. It is not. *See Bridges v. State*, 482 So. 2d 1139, 1140 (Miss. 1986). We find this issue is without merit.

### c.    Brown's Indictment

¶29. Brown asserts that his indictment is fatally defective because it does not state "against the peace and dignity of the state" on each page of his indictment. All that is required is "against the peace and dignity of the state" be included in the indictment, not that it be included on every single page of the indictment. *See* URCCC 7.06(7) (replaced by MRCrP

12

14.1(a)(2)(G)).[6] This issue is without merit.

### d.    Other Claims

¶30.    Brown repeats his arguments from sections II and III above. But, in a slight twist, Brown makes multiple claims that several State's witnesses, who also happen to be the attorney for the board of supervisors and two officers, violated 18 U.S.C. § 1001 (2012), because they are government officials and purportedly lied during their testimony. Brown also asserts that the State "committed [a] discovery violation by failing to disclose [his] statement[s] in discovery" in violation of Federal Rule of Criminal Procedure 16. As stated above, we find no error in the trial court's admitting Brown's oral confession and written statement, nor do we find any error in the court admitting hearsay statements from some of the witnesses. We write further only to note that the law Brown cites in support is inapplicable to his case. Section 1001 applies to "matter[s] within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States . . . ." 18 U.S.C. § 1001. And the Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States." Fed. R. Crim. P. 1(a)(1). "When a rule so states, it applies to a proceeding before a state or local judicial officer." Fed. R. Crim. P. 1(a)(2). Rule 16 does not state any such application. Thus, we find these issues are without merit.

---

[6] The Mississippi Rules of Criminal Procedure went into effect July 1 of this year. Rule 14.1(a) is based on former Rule 7.06 of the Uniform Rules of Circuit and County Court, which was in effect when Brown was indicted. MRCrP 14 cmt.

13

¶31.   Brown appears to also assert that his *Miranda* rights were violated when Roy Noble Lee Jr., one of the victims in this case, went to see Brown while he was in custody and spoke with him because Lee is also the attorney for the board of supervisors and thus a government agent that was interrogating him. *Miranda* concerns custodial interrogation "initiated by law enforcement officers . . . ." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). However, "*Miranda*'s requirements have since been applied to questioning conducted by a broad range of government agents *performing law enforcement functions*." *United States v. Borchardt*, 809 F.2d 1115, 1118 (5th Cir. 1987) (emphasis added). Lee, an attorney in private practice in Forest, Mississippi, did not become a law-enforcement officer, let alone someone performing a law-enforcement function, simply because he is the attorney for a local government body.

¶32.   However, the question arises whether this is a situation "where law enforcement officials recruited an individual to solicit information from a defendant." *Id*. at 1119. "Among the factors which determine whether a private entity is acting as an agent for the [g]overnment include: whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request." *United States v. May*, 440 F.Supp. 2d 1016, 1041 (D. Minn. 2006). A review of the record reveals that there was some degree of knowledge and acquiescence by law enforcement since they had to have let Lee into the jail, but nothing from the record reveals that Lee intended to assist law enforcement or acted at their request.

14

¶33. Nonetheless, even if Lee were acting in concert with law enforcement and his questioning was in some way a violation of Brown's *Miranda* rights, the error was harmless. According to Lee's testimony, Brown "didn't tell me where anything was. He didn't say he'd done it, but he did say, I'm sorry that this happened. You've always been good to us. You let us go down fishing at your lake and that was that." Nothing Lee testified to regarding his conversation with Brown incriminated him. We find this issue is without merit.

## CONCLUSION

¶34. The arguments Brown raises on appeal are without merit. His indictment was not impermissibly multiplicitous. The trial court did not err in denying his motion to suppress his inculpatory statements. The trial court did not commit reversible error in ruling on various hearsay objections. Brown was properly sentenced as a felon for malicious mischief. None of the other issues raised in Brown's pro se supplemental brief are meritorious. Therefore, the judgment of the circuit court is affirmed.

¶35. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**